JOSIAH B. THOMAS & another *vs.* ALFRED WELLS & another.

Essex.　Nov. 4, 1885. — Jan. 9, 1886.　FIELD & DEVENS, JJ., absent.

On the issue whether the defendant had, by a salesman, made a certain contract with the plaintiff, there was evidence that the salesman had authority to make such a contract, and that the plaintiff wrote to the defendant stating that such a contract was made, to which the only reply received was a letter written by the salesman on the letter-paper of the defendant, to which the defendant's name was signed by the salesman, admitting the contract to be as the plaintiff contended it was. *Held,* that the jury might properly infer that the salesman had authority to write the letter.

In an action for breach of an agreement to sell and deliver certain goods, it was agreed that, if the plaintiff was entitled to recover, he was entitled to recover for the failure to deliver a certain number of tons at a certain rate per ton. *Held,* that the plaintiff was entitled to interest on the amount so computed from the date of his demand.

CONTRACT for breach of an agreement to sell and deliver a quantity of straw board. Writ dated March 3, 1884. Trial in the Superior Court, before *Pitman,* J., who allowed a bill of exceptions, in substance as follows :

Rufus Thomas, one of the plaintiffs, testified that the plaintiffs were engaged in the manufacture of boxes, some of which were made of straw board, in Lynn; that in the latter part of August, 1879, one Charles N. Wells, who was a travelling salesman of the defendants and a son of one of the defendants, called upon the witness, at his place of business in Lynn, and asked him to purchase straw board, an article the defendants dealt in as middlemen; that after some talk as to price and the condition of the market, the plaintiffs agreed to buy fifty tons of straw board, with the privilege of having fifty tons more, if they, the plaintiffs, elected to take it, at the price of fifty dollars per ton, five per cent off in sixty days, or three per cent additional off if paid for on delivery; the straw board to be delivered in Lynn, at the depot of the Eastern Railroad Company, free of expense to the plaintiffs, within six months from said time, to wit, the last week in August, 1879, and in such quantities and in such sizes as the plaintiffs should require and order; that a few days after this conversation Charles N. Wells again called upon said Thomas at his place of business, who informed

him, the said Wells, that he would take the one hundred tons under the terms above set forth. The plaintiffs also called one Horace F. Simonds, who at the time of the making of the alleged contract was in the employ of the plaintiffs as bookkeeper, and conducted and wrote the correspondence of the plaintiffs in business matters, who testified substantially to the same effect, in relation to said contract.

It was admitted that the plaintiffs had had no dealings with the defendants from the June prior to the making of the alleged contract. The defendants admitted the right and authority of Charles N. Wells to make such a contract, but denied that the same was made; it was admitted by the defendants that they had sold and delivered straw board after the last part of August, 1879, but denied that it was sold under any contract for one hundred tons.

The defendants introduced as evidence certain letters written by the plaintiffs to the defendants after August, 1879, and within the alleged time of six months, which the defendants claimed contained statements inconsistent with the plaintiffs' claim that such a contract was made, and also letters written by the defendants to the plaintiffs in answer to letters of the plaintiffs. A letter dated November 14, 1879, written by the defendants to the plaintiffs, was put in evidence, in which the defendants stated that the plaintiffs' order was filled. Other letters passed between the parties, and up to this letter of November 14, 1879, whenever a letter was sent by the plaintiffs to the defendants that required an answer, the defendant Wells answered it. A letter dated November 15, 1879, from the plaintiffs to the defendants, was put in, and was an answer to the letter dated November 14. In this letter the plaintiffs stated that they had bought fifty tons, with the privilege of having fifty tons more at the same price. The plaintiffs then offered in evidence a letter dated November 17, 1879, which they contended was in answer to their letter of the 15th. No other answer to said letter was sent. This letter was signed " White & Wells," and underneath the firm name was written " C. N. Wells."

The defendant Wells was called as a witness by the plaintiffs to prove the handwriting of the letter, and, in answer to the plaintiffs, against the objection of the defendants, testified that

the letter had the appearance of the handwriting of said Charles N. Wells, but that he would not swear to it.

Prior to this, a letter dated July 8, 1878, purporting to have been written by Charles N. Wells, had been put into the case, the genuineness of which was not disputed. The plaintiffs contended that a comparison of this with the offered letter would establish the genuineness of the latter. The defendants objected to the admission of this testimony, but the judge admitted the same.

This letter of November 17 was then, against the objection of the defendants, read to the jury, and put in evidence. The letter contained the following: "Yours of the 15th is at hand and contents noted. Your understanding about the board is correct, and you shall have it at the price named by me when at your place, and as fast as the mill can make it." No direct evidence was offered tending to show that Charles N. Wells had any authority to answer any letters for the defendants, or had anything to do with the defendants' correspondence.

After the plaintiffs had closed their case, the defendant Wells, in his own behalf, testified that Charles N. Wells was not, and never had been, authorized to do any letter writing for the defendants, that it was no part of his duties, that it was the duty of the defendant Wells, that he had charge of it, that he alone had the right to do the correspondence, and that all letters written by his firm were copied in a letter press before being sent away; that he never saw the letter purporting to have been written by his son and salesman until it was produced in court, and that he never heard of it before the trial of this cause; and that when he received the letter of November 15, 1879, he did not answer it, as he thought his letter of November 14th was final and sufficient.

It also appeared that this letter purporting to have been written by his son had not been in a letter press; that it was written on paper that was the same as the defendants used in their office, and had their printed letter-head upon it.

The salesman, Charles N. Wells, was not present during the trial, and it appeared in testimony of the defendant Wells, in his own behalf, after the letter had been put in, that he was travelling somewhere in the West for a firm other than the defendants, and was not at the time of the trial in their employ;

that his father did not know where he was; that he had seen him some ten days before the trial, but he did not suppose the case was coming on for trial this term, and did not keep him for a witness; and that his son never informed him that he had written any letters to the plaintiffs.

The presiding judge left it to the jury to determine whether said letter should have any effect against the defendants upon the whole evidence, and in view of the law, which was fully stated by the judge, in a manner to which no exception was taken.

It was agreed that, if the plaintiffs were entitled to recover, they were entitled to recover for the failure to deliver forty-six and six fortieths tons, and that the measure of damages should be ten dollars per ton.

The jury were instructed, that, if they found for the plaintiffs, they must compute interest from the date of the demand, which was December 3, 1879, and not from the date of the writ.

The jury returned a verdict for the plaintiffs in the sum of $605.54; and the defendants alleged exceptions.

*W. H. Lucie*, for the defendants.

*W. H. Niles*, for the plaintiffs.

MORTON, C. J. We are of opinion that the letter of November 17, 1879, was properly submitted to the jury. The defendants do not now contend that there was no evidence tending to show that it was in the handwriting of C. N. Wells, but only that he was not authorized to write it. There was, however, evidence tending to show that he was authorized by the defendants to write the letter.

It was admitted by the defendants that C. N. Wells was in their employ as a salesman, and had authority to make a contract with the plaintiffs such as they contended had been made by him. The letter in question was signed, " White & Wells. C. N. Wells." It was written upon the business paper of the defendants' firm, and was in answer to a letter sent two days before by the plaintiffs to the defendants, which plainly required an answer, and to which no other answer was returned. Upon this evidence, it was not a violent inference for the jury to draw, that the plaintiffs' letter had been handed for an answer to Wells, the salesman who had made the contract with the plaintiffs and knew what its terms were.

The subsequent testimony of one of the defendants, denying he authority of C. N. Wells, was properly left to the jury, who alone were entitled to decide whether it controlled the plaintiffs' testimony.

It is not shown that there was error in the ruling of the Superior Court upon the subject of interest. Under the contract, the plaintiffs were entitled to have one hundred tons of straw board delivered to them, upon demand, from time to time. The bill of exceptions states that "it was agreed that, if the plaintiffs were entitled to recover, they were entitled to recover for the failure to deliver forty-six and six fortieths tons, and that the measure of damages should be ten dollars per ton." The fair meaning of this agreement is, that, at the time the defendants refused to perform the contract, the plaintiffs were damaged to the extent of ten dollars per ton, that is, that the goods were then worth ten dollars per ton more than the contract price. This being so, in order to put the plaintiffs in as good a position as they would have been in if the contract had been performed, they are entitled to interest from the date of their demand. Otherwise, they will not be fully indemnified.

*Exceptions overruled.*