SELECTMEN OF DANVERS *vs.* COMMONWEALTH.

Essex.    November 4, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, LORING, & BRALEY, JJ.

*Practice, Civil,* Referee, Costs.    *Waterworks.    Danvers.    Evidence.    Interest.*

On an award of commissioners, appointed under a statute as referees, the only questions of law open are those referred by the commissioners to the court.

A full statement by referees in their award of the principles of law on which they proceeded is not enough to submit to the court the correctness of those principles or of their application to the case.

The town of Danvers and the commissioners of the lunatic hospital acting for the Commonwealth, on June 23, 1876, made a contract by which the Commonwealth agreed to construct a reservoir near the hospital at Danvers at its sole expense and keep it in condition, and the town was to have the perpetual right to use the reservoir "as a storage basin for a supply of water to said town and to such other places as the town may hereafter desire." Upon the introduction of water to the reservoir by the town as agreed, the Commonwealth was to pay to the town $12,500 and annually thereafter for the term of twenty years the sum of $1,000 as full compensation for the supply of water for the hospital. At the expiration of the twenty years the Commonwealth and the town were to fix by mutual agreement the annual water rates thereafter to be paid by the Commonwealth. St. 1898, c. 564, provided that if the town and the trustees of the hospital should fail to agree as to the amount of compensation to be paid by the Commonwealth for water supplied by the town to the hospital under the contract, three commissioners should be appointed to determine the sum to be paid for such water each year from December 1, 1896, to December 1, 1899. On an award made by commissioners so appointed, it was *held,* that there was no error of law in a decision of the commissioners that the town was not entitled to charge the Commonwealth a profit on water consumed at the hospital, and that the Commonwealth should pay its share of the expenses actually incurred by the town in maintaining the whole system of waterworks, including extensions of distributing pipes. *Held, also,* that there was no error in a decision of the commissioners that no reduction was to be made from the sum awarded by the commissioners by reason of the payment of the $12,500 by the Commonwealth on the completion of the reservoir.

At a hearing before commissioners appointed under St. 1898, c. 564, to determine the amount to be paid by the Commonwealth to the town of Danvers for the use of water furnished to the Danvers lunatic hospital during a period named, under the contract between the Commonwealth and that town, evidence of the sums paid for water at the State prison and in other towns was held to have been excluded rightly.

On an award by commissioners appointed under a statute, to determine the amount to be paid by the Commonwealth to a certain town for the use of water annually during a period named, under a contract between the Commonwealth and the town, the Commonwealth was held to be liable for interest from the end of each year covered by the award.

Where commissioners were appointed under a statute, to determine the amount due to a town for water supplied to the Commonwealth, on a failure of the parties to agree on the amount due, and neither the petitioner nor the respondent was satisfied with the award, the petitioner was regarded as the prevailing party, and as such entitled to costs in the proceedings before the commissioners, the award being silent as to costs.

PETITION, filed October 26, 1898, under St. 1898, c. 564, by the selectmen of the town of Danvers for the appointment of commissioners to determine the amount due to that town from the Commonwealth for water furnished to the Danvers lunatic hospital, now called the Danvers Insane Hospital, from December 1, 1896, to December 1, 1899.

The case came on to be heard before *Morton,* J., upon a report of commissioners appointed under the statute and the exceptions of both parties to the rulings and refusals to rule of the commissioners, upon a motion of the respondent to recommit the report of the commissioners in order that they might make and report the computations called for in the requests annexed to the supplementary report of the commissioners, and upon a motion of the petitioners that the sum allowed by the commissioners to the Commonwealth for the use of the reservoir built by the Commonwealth be disallowed, and that the town be allowed a profit of fifteen per cent on the cost of the water furnished to the hospital by the town, and that as thus modified the report be accepted and confirmed. For the purpose of getting the case before the full court, the justice overruled *pro forma* the exceptions of both parties to the report, and also their respective motions, and ordered that the report be confirmed, saving to the parties all questions of law raised by the refusals of rulings by the commissioners, and by the motions made before the justice, and reported the case to the full court, such disposition to be made of it as to the full court should seem meet.

The contract under which the water was furnished was as follows :

" Articles of agreement made and concluded this twenty-third day of June in the year 1876, by and between the Commonwealth of Massachusetts, acting through the agency of the commissioners appointed under the authority of Chapter 239 of the Acts of the year 1873, entitled ' An Act to establish a hospital for the insane in the northeastern part of the Com-

monwealth,' of the first part; and the town of Danvers acting through the agency of the commissioners of said town, chosen under authority of Chapter 191 of the Acts of the year 1874, entitled 'An Act to supply the town of Danvers with pure water,' of the second part.

"Whereas, by the 224th chapter of the Acts of the year 1876, the commissioners on the part of the State were 'authorized and empowered, with the approval of the governor and council, to enter into contract with the water commissioners of the town of Danvers for procuring a permanent supply of pure water for the state hospital for the insane, located at Danvers'; and whereas, said commissioners on the part of said town are duly authorized to make such contract on the part of the town under a vote passed at a legal meeting held for that purpose on the eighth day of May last past; and whereas, the respective boards of commissioners have agreed upon the terms of a contract; now therefore, for mutual valuable considerations, and especially in consideration of the several agreements hereinafter set forth, the State and town do hereby mutually contract and agree as follows: —

"1st. The State shall, by the first day of December next ensuing, at its sole expense construct and fully complete for the use of the town, as hereinafter stated, in a substantial, thorough and perfect manner, a reservoir of the minimum capacity of five million gallons, to be located at such place near the hospital as the State Commissioners shall determine; which reservoir shall be perpetually kept by the State at its sole expense in a perfect, safe and pure condition.

"2d. The town of Danvers is to have the perpetual right, through the agency of its said commissioners or any other authorized agents, to use such reservoir as a storage basin for a supply of water to said town and to such other places as the town may hereafter desire; and said town may at any time enter upon the hospital grounds, and do any and all acts necessary and proper for laying, examining, maintaining and repairing any pipes which it may wish to lay through such grounds to and from the reservoir, as a part of the system of the water works of the town. In the exercise of these granted rights the town shall do as little damage as may be to the land, and shall replace

as speedily as possible the soil and fences which may be excavated or removed for the purposes named, and shall compensate the State if it shall be put to any expense by any act of the town in respect thereto. No pipes shall be laid in any direction or manner which the commissioners of the State or any of its further authorized agents shall regard objectionable as against the interest of the State. The State is to retain the exclusive possession and control of the reservoir, subject only to the rights of the town as aforesaid.

"3d. The town of Danvers shall, by the first day of December next ensuing, complete and thenceforth forever maintain its proposed water works between the sources of supply and reservoir, and perpetually thereafter keep a constant and ample supply of water in the reservoir, and permit the State to take therefrom, in any manner and at any time, all the water which the State through any of its authorized agents may desire or deem proper for the use of the hospital, and of all buildings that at any time may be owned by the State on the grounds, and also for use on the grounds themselves as now laid out, for any purposes whatever. The State may at any time, at its own expense for pipes, take water for any purposes before named directly from the pipes to be laid by the town.

"4th. Upon the introduction of the water to the reservoir by the town as stated in the last clause (3d), in a manner satisfactory to the State Commissioners, the State shall pay to the town of Danvers the sum of twelve thousand five hundred dollars, and from such time annually thereafter, for the term of twenty years, shall pay to the town the sum of one thousand dollars, as full compensation for the future supply of water for the hospital and other buildings and grounds.

"5th. At the expiration of said twenty years, the State and town shall by mutual agreement fix upon the annual water rates thereafter to be paid by the State.

"6th. The legislative acts before named may be referred to as explanatory of this agreement.

"In testimony whereof the Commonwealth of Massachusetts and the town of Danvers, through the agency of their respective boards of commissioners, have executed this agreement, as witness the hands and seals of said commissioners."

Here followed the signatures, under seal, of the hospital commissioners for the Commonwealth and of the water commissioners of the town of Danvers.

*D. N. Crowley*, for the petitioners.

*W. B. Sullivan*, for the Commonwealth.

LORING, J.   By St. 1898, c. 564, it was provided that if the town of Danvers and the trustees of the Danvers lunatic hospital failed to agree as to the amount of compensation to be paid by the Commonwealth for water supplied by that town to the hospital in pursuance of a contract between the Commonwealth and the town dated June 23, 1876, the Supreme Judicial Court, on application of either party, should appoint three commissioners to determine the sum to be paid for such water each year from December 1, 1896, to December 1, 1899.   It further provided that "the award of said commissioners or a majority thereof shall be returned into said court . . . and when accepted by said court shall be final and conclusive for such term of years."   The Commonwealth and the town having failed to agree, commissioners were appointed who have made an award which is now before this court on a report made by a single justice.

At the hearing before the commissioners eleven requests for rulings were made by the town and twenty-three were made by the Commonwealth.   It is stated in the award that exceptions "were duly saved" to the refusal to give the rulings requested and to the rulings given.   In this court a motion was made by the Commonwealth to recommit the award, with instructions to find in accordance with the rulings requested by it, and a motion was made by the town for a modification of the award and when modified for confirmation of it, and for the "cost of the reference."

We are at a loss to understand on what the commissioners were proceeding when they undertook to save exceptions to their rulings.   They seem to have assumed that they were acting as masters in chancery.   But if they were, they could not save exceptions to rulings of law.   See *O'Brien* v. *Keefe*, 175 Mass. 274, where the nature of a proceeding before a master is explained.   But they were referees and not masters in chancery, and the only questions of law open on an award made by referees

are those referred by them to the court. *Fairchild* v. *Adams*, 11 Cush. 549. *Gillis* v. *Cobe*, 177 Mass. 584. A full statement by referees in their award of the principles of law on which they proceeded is not enough to submit to the court the correctness of those principles of law and of their application to the case. Unless it can be held as matter of construction of the award that the correctness of the law has been submitted by the referees to this court, the statement of law in the award will be taken to be a statement of what the referees have found, made for the information of the parties and not to be a reference of the correctness of it to this court. *Ellicott* v. *Coffin*, 106 Mass. 365. *Carter* v. *Carter*, 109 Mass. 306, 309. *Rogers* v. *Mayer*, 151 Mass. 279, 280. See also *Smith* v. *Boston & Maine Railroad*, 16 Gray, 521, 524.

In view of the misapprehension of the parties as to what was before the court, we have had some doubt as to whether the award should not be recommitted. But on a full consideration of the whole case we do not think it clear that there has been such a mistrial as to make that necessary in justice to the parties.

It appears from the commissioners' award that in October, 1873, Hathorne Hill in Danvers was purchased by commissioners as the site of the Danvers Lunatic Hospital. For the four years preceding, the town of Danvers had been considering the establishment of a town system of waterworks. In March, 1874, a committee appointed by the town reported in favor of taking water from Middleton Pond in the town of Middleton, with a reservoir on Wills Hill. Wills Hill is in Middleton, immediately adjoining the pond. In the same year, the Legislature gave the town a right to take the waters of this pond for a water supply. St. 1874, c. 191.

In the spring of 1875 "the commissioners for the insane hospital proposed to the committee of the town that the town should build its works in connection with the hospital and thereby save an expense to both parties, proposing to give the town the right to build the reservoir on the hospital grounds, the use of all material for the same and including the right to lay the necessary pipes" for a sum then specified. This was not accepted by the town. In May, June and July, 1875, several

meetings of the town were held to see if the town would vote
to construct a system of waterworks under the act, for a cost
not exceeding $200,000, but the scheme was not adopted by the
town.   On April 28, 1876, the Legislature by St. 1876, c. 224,
authorized the commissioners to contract with the town for a
permanent supply of water for the lunatic hospital, and also gave
them leave to take water from the same pond as a water supply
for the hospital.   After some negotiations between the town
and the commissioners, the town passed a vote on May 8,
1876, authorizing its water commissioners to make a contract
with some person for the construction of waterworks at and
from Swan and Middleton ponds, and to contract with the
commissioners of the lunatic hospital in reference to a supply
of water to the hospital, " provided that the substantial effect
of said contracts taken together shall be that the cost to the
town of said works shall not exceed one hundred and fifty
thousand dollars, . . . said works . . . to include . . . a reser-
voir to be placed on Hathorne Hill in Danvers instead of Wills
Hill in Middleton."   In pursuance of that vote, a contract was
made between the town and the commissioners of the lunatic
hospital on June 23, 1876, which is the contract under which
the water now in question was furnished.   The provisions of that
contract are as follows:   First.   The State agreed to construct
and fully complete a reservoir at its sole expense, with a mini-
mum capacity of five million gallons, located near the hospital,
" which reservoir shall be perpetually kept by the State at its
sole expense in a perfect safe and pure condition."   Second.
The town was " to have the perpetual right " to use the reservoir
" as a storage basin for a supply of water to said town and to
such other places as the town may hereafter desire," with a right
to lay pipes through the grounds of the hospital as part of the
system of waterworks of the town.   Third.   The town agreed
by December 1, 1896, to " complete and thenceforth forever
maintain its proposed water works between the sources of supply
and reservoir and perpetually thereafter keep a constant and
ample supply of water in the reservoir, and permit the State
to take therefrom, in any manner and at any time, all the water
which the State through any of its authorized agents may desire
or deem proper for the use of the hospital, and of all buildings

that at any time may be owned by the State on the grounds, and also for use on the grounds themselves as now laid out, for any purposes whatever.   The State may at any time, at its own expense for pipes, take water for any purposes before named directly from the pipes to be laid by the town."   Fourth. " Upon the introduction of the water to the reservoir by the town " as agreed, " the State shall pay to the town of Danvers the sum of $12,500, and from such time annually thereafter for the term of twenty years, shall pay to the town the sum of $1,000 as full compensation for the future supply of water for the hospital and other buildings and grounds."   Fifth. " At the expiration of said twenty years the State and town shall by mutual agreement fix upon the annual water rates thereafter to be paid by the State."

The town immediately made a contract with one George H. Norman, by which the waterworks were to be constructed for the sum of $162,500, and the commissioners erected a reservoir on Hathorne Hill at a cost of $37,500, or thereabouts.   Upon the introduction of the water into the reservoir, the commissioners paid the town the $12,500.   The twenty years during which the water rates were fixed by the contract expired on December 1, 1896, and the commissioners in their award which is now before us have fixed the rates for the three years then next ensuing.

The question to be decided by the commissioners was almost entirely, if not entirely, a question of fact.   The case which they had to deal with was what was reasonably due for the services performed by the town in putting water into the reservoir on Hathorne Hill, for the use of the Commonwealth under the contract of June 23, 1876.   By the contract the water was to be put into the reservoir by the town and the town was to be paid for so doing.   But the parties did not agree upon the price, nor did they state in their contract what basis should be adopted in fixing the price.   Stripped of detail, the case was one where the town had furnished the Commonwealth with something of value to be paid for by the Commonwealth but without an agreement as to the amount to be paid therefor.   If the case is brought into court under those circumstances, the court has to find what is a reasonable price and that is almost purely an inference of

fact.    The parties and the commissioners have treated what in our opinion were questions of fact as questions of law, but on the whole we do not for this reason think that the case must go back for a further trial.

The commissioners ruled in accordance with a request made by the Commonwealth that the sum to be paid "should be based on the cost to place the quantity of water used at the hospital in the reservoir."

In making an estimate of this cost the commissioners have taken one thousand gallons as the unit, and have determined what. it cost to put into the reservoir one thousand gallons of water.    They first found the cost of the works outside the reservoir, and allowed interest on that amount at a fair rate ; to this they added an allowance for yearly depreciation and added the operating expenses.    This total cost divided by the number of gallons pumped, gave the cost per gallon, and that multiplied by the number used by the hospital gave the sum to be paid by the State, with this modification ; the State was held to be entitled to a credit for the use made by the town of the reservoir.

The cost of the plant outside the reservoir was found to be $292,441.18, in place of the original contract price of $162,500. The difference is made up of $16,504 for three miles and three thousand and eighty-eight feet of distributing pipe laid when the works were built in addition to the amount called for by the contract, $1,463.26, not accounted for paid to the contractor at that time, and $49,485.16, expended at and between the pond and the reservoir since the original construction of the works, plus $62,488.76, expended between the reservoir and the houses since then, for additional distribution pipe and similar purposes. The commissioners found that four and one half per cent was a fair rate of interest ; this made the interest charge $13,159.85. They found that the proper yearly allowance for depreciation was $5,618.86, and the cost of maintenance and operation $6,000, making a total of $24,778.71.    The total amount of water pumped was two hundred and thirty-four million five hundred thousand gallons, making the cost of one thousand gallons .1057.    The amount used by the hospital was forty-five million six hundred and twenty-five thousand gallons, which made a yearly sum of $4,822.56.    From this they deducted four-fifths of the interest

on the cost of the reservoir calculated at the same rate. They found that "the State had private and particular reasons for a reservoir of the size and location built and derives special advantages therefrom not participated in by the town," and ascertained the value of the reservoir to each party by taking the amount of water consumed by the two respectively. This they found to be as four to one. This gave the Commonwealth a credit of $1,350.

The principal contention of the Commonwealth is that it has nothing to do with the plant on the town side of the reservoir, that interest should be allowed on the cost of the plant at and between the pond and reservoir only, and that the allowance for depreciation and for operating expenses should be confined to this portion of the plant; further, that if the cost on which interest is to be charged is not so limited, interest should not be charged on the $79,092.76 ($16,504 + $62,488.76) expended for distribution pipes beyond those called for by the original contract; and that in place of being charged interest on the $12,500 contributed by the town (as it is, for this $12,500 is included in the $292,441.18) it is entitled to a credit for interest on that sum, for the same reason for which it is given a credit for interest on four-fifths of the cost of the reservoir.

The main contention of the town is that it is entitled to a profit on the water furnished the Commonwealth as it is on water furnished other water takers or consumers, and that the Commonwealth is not entitled to the credit of $1,350, given it for the use of the reservoir. It further contends that if it is to be charged for the use of the reservoir that sum should be taken into account in computing the cost of the unit of one thousand gallons. It also contends that it is entitled to interest on the three yearly payments from the end of each year.

On the main contentions of the Commonwealth and the town we see no error of law in the award.

In asking for a profit on the water supplied by it, the town in substance asks to be allowed to treat the Commonwealth on the basis on which it would have had the right to treat it if it had built a complete system of waterworks at its own expense. But that was not the case. On the contrary, it was not prepared to expend more than $150,000 on a system of waterworks, and

a complete system cost $200,000.    Under these circumstances it
joined the Commonwealth in establishing this system in which the
Commonwealth provided the reservoir and the town provided
the rest of the plant, at a cost of $162,500, on the promise of
the Commonwealth to pay it $12,500 on the completion of the
plant.

The Commonwealth on the other hand, in asking to limit the
town to interest on the cost of the works at and between the
pond and the reservoir and to the depreciation on that portion
only, and to the operation of that portion only, is asking to be
allowed to stand on the same basis as if it had built a system
of its own ending at the reservoir and was indebted to the town
for the erection, maintenance and operation of a part of that
system.

In our opinion neither contention is correct.    On the contrary,
it is plain that the town was not prepared to build and did not
build a system of its own, but accepted the co-operation of the
Commonwealth in furnishing the reservoir and in the payment
of $12,500 to keep the cost of the waterworks to itself within
the $150,000, to which the citizens decided to limit the town.
The system of waterworks in question is a system produced by
the town and Commonwealth for their joint use, and for that
reason the town is not entitled to charge the Commonwealth a
profit on water consumed at its hospital.    It is also plain that
the Commonwealth elected to come into the town system of
water and was not prepared to establish a system ending at the
reservoir on Hathorne Hill. . After electing to come into the
system it cannot ask to be treated as if a supply pipe had been
constructed to the reservoir and the system had ended there.
The sum reasonably due from it depends upon its share of the
expense actually incurred in maintaining and operating this
system of waterworks, and not on what might be calculated
would have been the expense to operate a plant ending at the
reservoir had such a plant been built.    There is a similar if not
the same reason for charging the Commonwealth with a share
of the whole system that there is for charging the water taker
next the reservoir the same rate charged the water taker at the
end of the most remote distributing pipe.

For these reasons we are of opinion that there was no error

of law in refusing to give the town a profit on the one hand, and on the other hand in refusing to limit it to the cost, maintenance and operation of the plant at and between the pond and the reservoir.  Nor was there any error of law in including in the cost subsequent extensions of the distributing pipes.  In connection with the last two of these propositions it is to be noted that the contract contemplates the possible extension of the system to other towns.  It is there provided that the reservoir is to be used "as a storage basin for a supply of water to said town and to such other places as the town may hereafter desire."

We are also of opinion that the evidence as to the sums paid at the State prison and in other towns was properly excluded.

As to the contention of the town that if it is to pay for the use of the reservoir, the $1,350 paid by it should be included in estimating the cost of delivering the one thousand gallons.  The question was not what did it cost to deliver one thousand gallons; it was what did it cost the town to put one thousand gallons in the reservoir.  The $1,350 is paid for the use made by the town of the reservoir for water not consumed by the Commonwealth, the hospital standing the balance of interest on the cost of the reservoir, to wit, $337.50, for the use which it makes of the reservoir.  We see no error of law here.

We are also of opinion that no reduction is to be made from the sum awarded by the commissioners by reason of the payment of $12,500.  By the terms of the award such a reduction is to be made if " as matter of law the true construction of that clause of the contract and of the whole contract should be that the sum of $12,500 was paid as a contribution by the State towards the cost of that portion of the water works owned by the town or if it should be determined to be a sum paid in advance as water rates for the period of twenty years and forever." If this is a question of law at all, we see no error in the view taken by the commissioners, to wit, that after the period of the twenty years at any rate the Commonwealth had no interest in the plant by reason of this payment, and was not entitled to consideration by reason of it.

The Commonwealth in arguing the motion of the town to have the award recommitted for modification has pointed out that not only is it denied a credit by reason of the payment of

$12,500, but that it is made to pay interest on this sum, for it is included in the $292,441.18 on which it is charged interest. But that question was not raised by any of the rulings requested by the Commonwealth, and does not appear to have been called to the attention of the commissioners; and for that reason it cannot be taken to be ground for sending the case back because of a mistrial. In disposing of this matter on this ground, we should add that the commissioners would be warranted in treating it as they did. It might well be taken that the $12,500 paid the town stands on a different footing from that of the $37,500 expended in constructing the Commonwealth's reservoir. For the $12,500 paid the town the Commonwealth did not stipulate in the contract for an undivided interest in the plant outside the reservoir or for the ownership of a specified portion of it. The title to the plant outside the reservoir was and is in the town, while the title to the reservoir built with the $37,500 is in the Commonwealth. The view may well be taken that on the expiration of the twenty years, if not before, the Commonwealth was not entitled to consideration by reason of this payment.

The Commonwealth's next claim is that no sum should be charged for depreciation of the town's works between the pond and the reservoir, because by the terms of the contract the town is obliged to " forever maintain its proposed waterworks between the sources of supply and reservoir." This clause in the contract is in marked contrast to the clause as to the maintenance of the reservoir; it is provided that the reservoir is to be maintained " at its sole expense." We see no error of law in this.

It appears that since the completion of the works an additional reservoir has been built on Wills Hill, and the Commonwealth claims that the cost of this should not be included in the plant on which it pays interest and on which it pays the cost of maintenance and operation. It is not stated in the report why this was built. We cannot say that it was not a proper expenditure, and no error of law appears in including it in the calculation.

The Commonwealth's next claim is to " be credited with interest on the value of the site for the reservoir." Its contention here is that as the town is allowed for land purchased and land damages paid, *it is entitled to a credit for the use of its*

land. We see no error of law in omitting this. The Commonwealth already owned the land and needed a reservoir for its own use. The land for the cost of which an allowance is made to the town was purchased by it for this purpose and this purpose only.

The question of interest on the yearly sums found due has been referred to the court by the commissioners. We think that the Commonwealth is liable for interest as damages from the end of each year. The case is like *Hodgkins* v. *Price*, 141 Mass. 162.

The award being silent on the matter, the petitioners are entitled to costs before the commissioners, *Woolson* v. *Boston & Worcester Railroad*, 103 Mass. 580, but neither party is entitled to costs in this court.

The entry must be

> *Judgment on the award in favor of the petitioners for the sum of $10,417.68, with interest at six per cent on $3,472.56, part of said sum of $10,417.68, from December 1, 1897, and on $3,472.56, also part thereof, from December 1, 1898, and on $3,472.56, the balance of said $10,417.68 from December 1, 1899, and costs of the hearing before the commissioners.*