PERKINS SCHOOL FOR THE BLIND vs. RATE SETTING
COMMISSION & others.

Suffolk. February 12, 1979. — October 30, 1980.

Present: ARMSTRONG, BROWN, & KASS, JJ.

*Rate Setting Commission. Division of Hearings Officers. Common*
*wealth,* Claim against. *Contract,* With Commonwealth. *Interest,*
Claim against Commonwealth. *Practice, Civil,* Parties, Amendment.
*Waiver.*

Since it was the function of the Rate Setting Commission and the Division
   of Hearings Officers on appeal from a commission determination
   merely to set the rates for services rendered by a private school and
   chargeable to the Department of Education, the school did not waive
   its claim for interest on amounts owed by the department by failing to
   press the matter before the division or the commission, nor were the
   decisions of the division and the commission in error by reason of the
   fact that they made no provision for the payment of interest on the
   overdue amounts; the function of establishing the amount owed for
   services computed at the rate set by an administrative agency is a function to be performed by the courts. [660-661]
In a case in which the Commonwealth was an indispensable party to a
   contract claim against it and had not been joined as a party defendant,
   but the Commonwealth's interests had been effectively represented by
   the Attorney General who appeared on behalf of the named defendants, the plaintiff was permitted to amend its complaint to add the
   Commonwealth as a party defendant. [661-662]
The Commonwealth was liable under G. L. c. 258, § 12, to a private
   school for interest on the difference between the amounts the Commonwealth paid the school for the education and care of special needs students and higher amounts later determined by the Rate Setting Commission to have been payable for those services. [662-667]

Two CIVIL ACTIONS commenced in the Superior Court on
April 9 and May 17, 1976, respectively.

The cases were reported by *Ford,* J.

*Ansel B. Chaplin* (*Gary L. Hoff* with him) for the plaintiff.

*Margot Botsford,* Assistant Attorney General, for the Rate Setting Commission & others.

ARMSTRONG, J. These cases, which come to us by report of a judge of the Superior Court, present the single question whether the Commonwealth is liable to the Perkins School for interest on the difference between the amounts the Commonwealth originally paid the school for the education and care of special needs students and the higher amounts which were later determined to have been payable for those services under the statutory standard of "adequate, fair and reasonable" compensation. G. L. c. 6A, § 36, as inserted by St. 1973, c. 1229, § 2. The Division of Hearings Officers and the Rate Setting Commission had refused the school's demands that their decisions make provision for the payment of such interest, and the school filed complaints seeking judicial review of those decisions under the provisions of G. L. c. 30A, § 14, as amended through St. 1976, c. 411, §§ 1 and 2. Named as defendants were the Department of Education, which, by agreement with the Perkins School, pays the charges for certain students under State programs; the Rate Setting Commission, which, by law, establishes the rates at which various agencies of the Commonwealth pay medical or educational providers for services to State-assisted recipients;[1] and the Division of Hearings Officers, estab-

---

[1] General Laws c. 69, § 26, as amended through St. 1964, c. 497, authorized the Department of Education to place students at the Perkins School, among others, and to pay the school the expenses of their instruction and support "but not exceeding ordinary and reasonable compensation therefor." The general appropriations act for the 1971-1972 fiscal year required that the rates of compensation for such instruction and support be approved by the Rate Setting Commission "in accordance with the procedures established by [G. L. c. 7, § 30L]." See St. 1971, c. 719, § 16C, as amended by St. 1971, c. 1003, § 5; the corresponding provisions for the succeeding fiscal years were St. 1972, c. 514, § 16C; St. 1973, c. 466, § 24; and St. 1974, c. 431, § 18. General Laws c. 69, § 26, was repealed by St. 1972, c. 766, § 8, effective (by § 23) September 1, 1974. Despite that fact, subsequent general appropriations acts continued to require that rates of compensation under § 26 be approved by the Rate Set-

lished by G. L. c. 7, § 4H, and which, under G. L. c. 6A, § 36, hears appeals by providers aggrieved by rates fixed by the commission.

The controversy began in 1971, when the Perkins School announced increases in charges for the 1971-1972 school year. As was customary, the charges were not set high enough to pay the entire cost of education at Perkins School, because the school anticipated income from endowments and gifts which it would apply to operating costs so as to make up the deficiency in revenue from charges. The Rate Setting Commission at that time based its rates on the lower of charges or allowable costs,[2] and consequently, in a usual year, the commission would have adopted the schedule of charges announced by the school as the rates payable by the Department of Education for State-assisted students. But that year the President of the United States, acting under the authority of the Economic Stabilization Act of 1970, announced a wage-price freeze,[3] and the Department of Edu-

---

ting Commission. See, e.g., St. 1975, c. 684, § 18; St. 1976, c. 283, § 18; St. 1977, c. 363A, § 22; St. 1978, c. 367, § 23. General Laws c. 7, § 30L, required the commission to establish "fair and reasonable rates of payment." Section 30L was repealed by St. 1973, c. 1229, § 4. The replacement statute, G. L. c. 6A, § 32, uses the phrase, "fair, reasonable and adequate rates." An appeal lies to the Division of Hearings Officers from the rate established by the commission; G. L. c. 6A, § 36, requires that "[o]n appeal, the rate determined for any provider of services shall be adequate, fair and reasonable . . . ." We discern no legislative intention to change the substance of the ratemaking standard during the three rate periods at issue in this case, and it is common ground among the parties that the statutory standard relevant to those cases is that the rates be "fair, adequate and reasonable."

[2] The "lower-of-costs-or-charges" formula was set by statute under G. L. c. 7, § 30K, as in effect prior to St. 1968, c. 492, § 3, and as in effect at the time of *Massachusetts Gen. Hosp.* v. *Cambridge,* 347 Mass. 519 (1964), and it seems to have been implicit in the Commission's regulations in effect during the periods relevant to this case. Compare the prospective system of rate setting discussed in *Massachusetts Gen. Hosp.* v. *Weiner,* 569 F.2d 1156 (1st Cir. 1978).

[3] The Economic Stabilization Act was Title II of Pub. L. No. 91-379, 84 Stat. 799, as amended by Pub. L. No. 92-210, 85 Stat. 743. The President's Executive Order No. 11640, 37 Fed. Reg. 1213 (1972), was an-

cation and the Rate Setting Commission took the position that any increase in Perkins School charges would be in violation of the President's executive order and ensuing regulations. The upshot was that during the school years 1971-1972 and 1972-1973 the rates set by the commission and paid by the department were lower than the rates charged by the Perkins School. The school billed the department, as required in order for the school to receive any payment at all, at the rates established by the commission; but the school expressly reserved its claim that it was entitled to receive payment at the higher rates it charged other students.

A second, independent controversy arose in 1974, which apparently had its origin in institutional or bureaucratic inflexibility in adjusting the commission's policy of establishing rates on a calendar-year basis with the school's policy of establishing charges on a school-year basis. The result was that various increases adopted by the school to take effect September 1, 1974, were adopted by the commission effective January 1, 1975, and the school appealed to the Division of Hearings Officers for higher rates for the period September through December, 1974.

In 1976, the Division of Hearings Officers, after hearing, ruled in favor of the Perkins School with respect to each of the periods in question and ordered the establishment of new rates for each period identical to the schedules of charges which had been fixed by the school. For the school year 1971-1972 the new rates translated into a deficiency of $108,675; for 1972-1973, $51,000; and for September-December, 1974, $28,425. All those figures were agreed to by the parties; but, after the hearing officer's decision was announced, the school raised, by way of a motion for reconsideration, the question of its entitlement to interest on

nounced January 27, 1972, but prices were frozen at the levels in effect on August 15, 1971. The Cost-of-Living Council later issued regulations exempting the tuition of nonprofit educational institutions from the freeze. See 37 Fed. Reg. 1241, amended by 37 Fed. Reg. 6827 (1972).

those amounts. The division reconsidered but declined to amend its decision; the commission, in adopting the rates required by the hearing officer's decision (see *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 378 Mass. 189 [1979]), similarly rejected a claim by the school for interest.

The defendants take the position that any claim for interest was waived by the school's failure to press it in the first instance before the Division of Hearings Officers. We have concluded that the claim for interest was not waived, although for a reason not discussed by the parties.

The statutes mentioned in note 1, *supra*, particularly G. L. c. 6A, §§ 32 and 36, define the function of the Rate Setting Commission and of the Division of Hearings Officers on appeal from a commission determination; their function is to establish rates at which providers will be compensated for services (or, occasionally, goods, such as prescription drugs or other health care supplies) to State-assisted recipients. We find nothing in the statutory scheme which can be construed to vest in those agencies authority to adjudicate the amounts owed by the Commonwealth for services rendered by particular providers subject to State reimbursement, or, in effect, authority to process contract claims against the Commonwealth. The rates fixed by the commission constitute, of course, the basis for computing the amounts payable by the Commonwealth for such services; and where such rates have not previously been fixed, a contract claim for payment will be stayed until that administrative function has been performed. See *Massachusetts Gen. Hosp.* v. *Cambridge*, 347 Mass. 519, 523-524 (1964). A rate is merely a price; and the function of establishing the rate is analytically distinct from the function of determining the amount owed for services computed at that rate, a function which takes into account such factors as the volume of services rendered, compliance with contract terms in the rendering of those services, and any other claims for breach of the contractual relationship. The first function is delegated to administrative agencies, subject to judicial review; the latter, under our statutes and cases, is a function of the courts. By

this division of authority it was the province of the Rate Setting Commission and the Division of Hearings Officers to fix, in accordance with the statutory standard, the rate which was to be the basis of payment to the Perkins School for students chargeable to the Department of Education, regardless of the number of students who might fall into that category. It was not the function of the commission or the hearing officer to determine whether the Commonwealth was obliged to compensate the school in interest for delays in the payment of amounts due the school for services rendered, and any determination of that question by those agencies would not have been binding on the Commonwealth. It follows that the school did not waive its claim for interest by any failure to press the matter before the division or the commission. It also follows that the decisions of the agencies were not in error by reason of the fact that they made no provision for the payment of interest on overdue amounts. No other claim of error is made; thus, to the extent that the present proceeding is regarded simply as a complaint under G. L. c. 30A, § 14, for judicial review of the agency decisions, the disposition must be that the agency decisions be affirmed.

It is obvious, however, that the sole reason for filing the complaint was to obtain an adjudication of the school's entitlement to interest. No objection has been raised by the Attorney General to resolving that issue in the present proceeding, and the issue has been fully argued on the merits. There is a technical problem, in that the claim for interest is, according to our view as indicated above, a contract claim against the Commonwealth. It is well settled that the Commonwealth is an indispensable party to such a claim. *Assessors of Edgartown* v. *Commissioner of Rev.,* 379 Mass. 841, 844-845 (1980). *Mitchell* v. *Metropolitan Dist. Commn.,* 4 Mass. App. Ct. 484, 488-489 (1976). The Commonwealth has not been joined as a party defendant. Nevertheless, the Attorney General, who would have represented the Commonwealth, appeared for each of the three named defendants and presented to the court in their behalf

the same contentions, presumably, which he would have made on behalf of the Commonwealth in resisting the school's claim for interest. It is inconceivable, in these circumstances, that the Commonwealth has been prejudiced by not being made a party defendant from the outset, and, due to the running of limitations periods, the school will be severely prejudiced if the case should be dismissed for want of an indispensable party. It is an appropriate case, therefore, for the allowance of a motion to amend the complaint by joining the Commonwealth as a party defendant and by stating a claim for the recovery of interest under the provisions of G. L. c. 258, § 12, as appearing in St. 1979, c. 1, § 1. It is safe to assume that a motion for such an amendment will be made unless the substantive question of the school's entitlement to interest should be resolved adversely to it; and, as that question has been fully briefed and argued, putting off its resolution until the amendment has been made would only result in pointless delay. We turn, therefore, to that question.

Our starting point is the familiar ground that the Commonwealth has abrogated the doctrine of sovereign immunity in several areas, the relevant one for present purposes being that, by G. L. c. 258, § 12, it has given its courts jurisdiction to hear and resolve contract claims against the Commonwealth. The jurisdiction thus granted extends, as was decided in cases under a virtually identical predecessor statute (G. L. c. 258, § 1, as in effect prior to St. 1978, c. 512, § 15), to "mak[ing] the Commonwealth answerable down to the judgment in its own courts for any just and legal claim against it . . . exactly as though it were a private individual." *Nash* v. *Commonwealth*, 174 Mass. 335, 339 (1899), S.C., 182 Mass. 12 (1902). *First Natl. Ins. Co. of America* v. *Commonwealth*, 376 Mass. 248, 251 (1978). In a contract action, therefore, interest is allowed against the Commonwealth in the same manner and to the same extent that it would be allowed against a private person. *C. & R. Constr. Co.* v. *Commonwealth*, 334 Mass. 232, 233-234 (1956), and cases cited. See also *Trustees of the*

*Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 367 Mass. 57, 64-66 (1975), *S.C.*, 373 Mass. 858 (1977). Contrast *Gurley* v. *Commonwealth*, 363 Mass. 595, 599-600 (1973), and *Broadhurst* v. *Director of the Div. of Employment Security*, 373 Mass. 720, 725-727 (1977), each of which concerned a plaintiff who did not stand in a contractual relationship to the Commonwealth and who sought compensation by way of interest for the delay which accompanied his receipt of certain statutory benefits. The Perkins School is, of course, not a beneficiary of the assistance program established by the former G. L. c. 69, § 26 (see note 1, *supra*), but instead, as a provider of services, stands, as the Attorney General appears to concede, in a contractual relation to the Department of Education, and thus to the Commonwealth. See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. 206, 208-209 (1971). For that reason we have no doubt that interest is owed to Perkins School under G. L. c. 107, § 3, for any "detention of money beyond the reasonable time which the statutes requiring payment to [the school] fairly should be interpreted as contemplating." *Id* at 209. If G. L. c. 6A, § 35(3),[4] has application to the Perkins School, it does not have the effect of barring claims for interest, which is not compensation for "educational services" but for delay in the payment of money.

The more difficult task is to ascertain the starting point from which the obligation to pay interest ran. The Attorney

---

[4] General Laws c. 6A, § 35, as appearing in St. 1973, c. 1229, 82, requires that "[a]ny provider of health care services which receives reimbursement or payment from any governmental unit for general health supplies, care, social rehabilitative and educational services and accomodations shall, as a condition of receipt of such reimbursement or payment . . . (3) accept reimbursement or payment at the rates established by the [Rate Setting C]ommission subject to a right of appeal under section thirty-six, as discharging in full any and all obligations of an eligible person and the governmental unit to pay, reimburse or compensate the provider of health care services in any way *for general health supplies, care, social, rehabilitative and educational services of accomodations provided*" (emphasis supplied). An appeal under § 36 is by the terms of § 35(3) the exclusive method of contesting the rate, but seems to have no bearing on other areas of dispute between the contracting parties.

General points out that the Department of Education was entitled — indeed, obliged — to pay Perkins at the rates set by the commission until the rates were revised upward in 1976, and that payment of the difference was made within a reasonable time thereafter. Thus, it can be argued, the case is governed by the principle that a "party [who] has done all that the law required of him in the particular case . . . is not accountable for interest; if he has not, he is accountable for it as compensation for the non-performance of his contract." *Vaughan* v. *Lemoine*, 330 Mass. 83, 86 (1953), quoting *Dodge* v. *Perkins*, 9 Pick. 368, 386 (1830). See also *New England Factors, Inc.* v. *Genstil*, 322 Mass. 36, 40 (1947). The problem is latent in any contractual arrangement where goods or services presently to be delivered are to be paid for at a rate to be ascertained by the rendering of a decision or the happening of a contingency not within the control of the parties. Unless a contract provides otherwise, it is settled that a vendor of goods or services has a right to expect payment at the time the services are rendered or the goods delivered or, depending on the custom of the trade, within a reasonable time thereafter. 1 Williston, Contracts § 38, at 115 (1957). 1 Corbin, Contracts § 96, at 415 (1963).

But if the contract contemplates that the price (or portion thereof) is ascertainable only by reference to a decision or event not within the control of the parties, and if the contract does not provide otherwise, the buyer is presumptively entitled to withhold payment of the price (or portion thereof) until it has been ascertained in the manner contemplated; until that time any particular amount tendered might be an overpayment, and the buyer has no obligation to overpay. The problem arises when the determination of price is delayed beyond the time when the vendor has a reasonable expectation of payment; in that event, should the vendor suffer the loss and the buyer receive a corresponding windfall? That is, should the buyer, at the seller's expense, have the benefit of the goods or services and, at the same time, the use of the purchase price, until the latter should be determined?

We think that neither reason nor case law dictates such a result. A case in point is *Selectmen of Danvers* v. *Commonwealth*, 184 Mass. 502 (1904). Under an agreement entered into in 1876, the State mental hospital in Danvers was supplied water from the town supply for a period of twenty years at a stated price; the town was obligated to supply the water in perpetuity, but after twenty years the price was to be fixed by agreement. The town and the State could not agree; and, by St. 1898, c. 564, it was provided that the Supreme Judicial Court should appoint three commissioners to determine the sums to be paid for three one-year periods (December 1, 1896, to December 1, 1899) subject to the approval of the court. On the sums thus determined, the court ruled that the Commownealth was obligated to pay interest from the times when the sums would have been paid had there been no disagreement. 184 Mass. at 515. That is obviously a just rule, because it reconciles the right of the purchaser not to pay before the sum due is ascertained with the right of the seller to receive timely payment or to be compensated for delay in payment. If no interest were owed, the buyer woud be unjustly enriched at the seller's expense. Looked at another way: If payment at the 1971-1972 rates fixed by the Rate Setting Commission would have represented "fair, adequate and reasonable" compensation for services if it had been paid at the time the services were rendered in 1971-1972, the same amount could hardly be considered fair, adequate, or reasonable compensation if paid five or six years later. Compare *Thomas* v. *Wells*, 140 Mass. 517, 521 (1886); *Frazer* v. *Bigelow Carpet Co.*, 141 Mass. 126, 128-129 (1886); *Cochrane* v. *Forbes*, 267 Mass. 417, 420 (1929).

There is nothing in the record to suggest that it is the practice of the Division of Hearings Officers or the Rate Setting Commission to adjust a rate in dispute upward to offset the anticipated delay in payment. Compare *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. at 209. To the contrary, the fact that the revised rates were identical to the tuition and board charges fixed by the Per-

kins School for each of the periods in dispute strongly suggests that no such adjustment was in fact made. In these circumstances there is no danger of double recovery if the Commonwealth, like any other contracting party, is made to pay interest for the delay. That result seems to us to do justice in the present cases and to accord with the general principle that the Commonwealth stands in the same position as a private person in its contractual relations.

The school is therefore entitled to receive interest on the differences between each monthly payment originally made by the Commonwealth and the amount which should have been paid at the time based on the revised rates promulgated in 1976 by the commission. Interest is to be computed at the legal rate (G. L. c. 107, § 3), as in *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. at 209; and, as in *Selectmen of Danvers* v. *Commonwealth*, 184 Mass. at 515, it is to run from the end of each of the monthly billing periods to the date the Commonwealth paid whatever balance was due under the rates as revised in 1976. Although the Commonwealth's obligation to pay the interest charges thus computed accrued when the commission established the higher rates, there is some question whether, under the general common law rule against compounding of interest, the aggregate of the interest charges would have borne interest from that time to this. See *Ellis* v. *Sullivan*, 241 Mass. 60, 64 (1922); *Shapiro* v. *Bailen*, 293 Mass. 121, 123-124 (1936). The common law has been supplanted in this respect, however, by G. L. c. 231, § 6C, which is applicable because the present action, if the complaint is amended in the manner heretofore suggested, is one based on a contractual obligation which will have resulted in an order for judgment for pecuniary damages, namely the aggregate of the interest charges computed under G. L. c. 107, § 3, to the date of the commission's decision. To the damages thus computed § 6C allows interest from the date of the filing of

the complaint for judicial review of the commission's decision,[5] computed at the rate of eight percent per annum.[6]

The case is remanded to the Superior Court. If, within thirty days after the date of rescript the plaintiff should file a motion to amend the complaint to name the Commonwealth as a party defendant, the motion should be allowed and a judgment entered against the Commonwealth for damages computed in the manner hereinbefore specified, to which the clerk should add interest as provided in G. L. c. 231, § 6C, in conformity with this opinion. The judgment should further declare (or, if no motion to amend the complaint is filed, simply declare) that the decisions of the Division of Hearings Officers and the Rate Setting Commission are affirmed.

*So ordered.*

---

[5] Perkins' motion for reconsideration by the Division of Hearings Officers (which asserted·a claim for interest) was not a "demand"within the meaning of § 6C because it was not addressed to an agency that was empowered to hear the demand or accede to it. If the complaint is amended, the amendment will in the usual manner relate back to the original filing of the complaint. *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 89 (1962); *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 787 n.11 (1975). *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 388-389 (1980). Mass.R.Civ.P. 15(c), 365 Mass. 762 (1974).

[6] General Laws c. 231, § 6C, was amended by St. 1980, c. 322, § 2, to provide for interest at the rate of ten percent per annum, but, by the terms of the act the higher rate only applies to actions commenced on and after the act's effective date. In that respect the 1980 act is dissimilar to St. 1974, c. 224, § 2, which raised the rate from six percent to eight percent and which was silent concerning the effective date of the increase. In *Industrial Engr. & Metal Fabricators, Inc.* v. *Fontaine Bros.*, 2 Mass. App. Ct. 695, 698-699 (1974), it was held that the eight percent rate applied from the effective date of the act, and the six percent rate up to that date, with respect to sums found due in litigation then pending. That interpretation was approved in *Porter* v. *Clerk of Superior Court*, 368 Mass. 116, 199 n.4 (1975).