PERKINS SCHOOL FOR THE BLIND *vs.* RATE SETTING
COMMISSION & others.[1]

Suffolk. March 2, 1981. — June 30, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Rate Setting Commission. Division of Hearings Officers. Common-*
*wealth,* Claim against. *Contract,* With Commonwealth. *Interest,*
Claim against Commonwealth, Computation. *Practice, Civil,* Par-
ties, Amendment.

Neither the Rate Setting Commission nor the Division of Hearings Offi-
cers on an appeal from a decision of the commission had authority to
allow an award of interest on a claim by a provider of educational
services to publicly-assisted students seeking interest on the difference
between the amounts the Commonwealth paid for certain services and
the higher amounts which were later determined through administra-
tive appeals to have been payable. [827-829]

On finding that an action by a provider of educational services to public-
ly-assisted students seeking interest on amounts found to have been
payable to it by the Department of Education was essentially a con-
tract claim against the Commonwealth, the Appeals Court did not
abuse its authority in ordering the allowance of a motion to amend the
complaint by joining the Commonwealth as a party defendant; the
possibility that the Commonwealth was prejudiced in so far as the Ap-
peals Court ruling denied it an opportunity to present evidence rele-
vant to a determination of the issues raised by the contract claim did
not in the circumstances require dismissal of the Commonwealth as a
defendant. [829-830]

Where it appeared that administrative delays in the processing of appeals
brought by a provider of educational services with respect to a rate
determination by the Rate Setting Commission caused a delay of
payments to the provider beyond the time contemplated by G. L.
c. 6A, § 36, the Commonwealth was liable for interest to the extent
the delays were not caused by the provider. [831-834]

A provider of educational services to publicly-assisted students was enti-
tled to interest at the rate established by G. L. c. 231, § 6C, rather

---

[1] The Division of Hearings Officers and the Department of Education.

than the rate under c. 107, § 3, on the difference between amounts paid by the Commonwealth and higher amounts later determined through administrative appeals to have been payable, for any period of delay in the processing of the administrative appeals which was chargeable to the Commonwealth. [834-837]

Two CIVIL actions commenced in the Superior Court on April 9 and May 17, 1976, respectively.

The cases were reported by *Ford*, J. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Ansel B. Chaplin (Robert E. Cowden, III,* with him) for the plaintiff.

*Donald K. Stern,* Assistant Attorney General *(Joan C. Stoddard,* Assistant Attorney General, with him) for the defendant.

LIACOS, J. This case involves two actions consolidated in the Superior Court for judicial review of administrative proceedings, pursuant to G. L. c. 6A, § 36, and G. L. c. 30A, § 14. In both cases the plaintiff, Perkins School for the Blind (Perkins), a provider of educational services to publicly-assisted students, appeals from the failure of the defendants Division of Hearings Officers (division) and Rate Setting Commission (commission) to award Perkins interest on the difference between the amounts the Commonwealth originally paid the school for certain services and the higher amounts which were later determined through administrative appeals to have been payable.[2] The Department of Education (department), the purchaser of these services, is also named a defendant. A judge of the Superior Court reported to the Appeals Court the single issue whether interest may be allowed against the Commonwealth in this case.

---

[2] The first case centers around the rates for the school years 1971-1972 and 1972-1973. The second case involved the rates during September through December, 1974. In 1976 the division ruled in favor of Perkins with respect to each of the periods in question and ordered the establishment of new rates identical to those which had originally been sought by Perkins. For a more detailed statement of facts see *Perkins School for the Blind* v. *Rate Setting Comm'n,* 10 Mass. App. Ct. 656 (1980).

The Appeals Court ruled that neither the division nor the commission has authority to render an award of interest against the Commonwealth. *Perkins School for the Blind* v. *Rate Setting Comm'n,* 10 Mass. App. Ct. 656, 660-661 (1980). The court observed that Perkins's sole reason for filing its complaint in the Superior Court was to obtain an adjudication of its entitlement to interest; that this was essentially a contract claim against the Commonwealth; and that the Commonwealth is an indispensable party to such a claim. *Id.* at 661. Nevertheless, the Appeals Court, sua sponte, ordered that, if filed within thirty days after date of rescript, a motion to amend the complaint by joining the Commonwealth as a party defendant and stating a claim for recovery of interest under the provisions of G. L. c. 258, § 12, should be allowed. *Id.* at 662. Relying primarily on our decision in *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 359 Mass. 206 (1971), the court ruled that Perkins was entitled to interest on the difference between each monthly payment originally made and the amount which should have been paid based on the revised rates promulgated in 1976 by the commission. The court ruled also that interest was to be computed at the legal rate (G. L. c. 107, § 3), running from the end of each monthly billing period to the date the balance due under the adjusted rates was paid. *Id.* at 662-667. The court allowed further interest on the damage judgment thus computed in conformity with G. L. c. 231, § 6C. *Id.* at 666-667. We granted the defendants' motion for further appellate review.

Several issues are raised in this appeal: (1) whether either the division or the commission has authority to allow an award of interest against the Commonwealth, (2) whether the Commonwealth was properly joined as a defendant, (3) whether the plaintiff is entitled to interest, and (4) what is the appropriate method of computation of interest, if allowed. We consider these issues in turn.

1. *Authority of the commission and division.* The regulatory scheme established by G. L. c. 6A, §§ 31-36, controls the financial relationship between providers of various

covered health care, social, and educational services and governmental agencies paying for such services on behalf of publicly assisted individuals.[3] Pursuant to G. L. c. 6A, § 32, the commission is established and charged with "the sole responsibility for establishing fair, reasonable, and adequate rates to be paid providers of health care services by governmental units." The commission performs this duty by annually promulgating, after public hearing, a general and comprehensive regulation which sets forth the rate setting formula. It then calculates a rate of payment for each individual provider by applying the formula to the provider's reported cost information. Under G. L. c. 6A, § 36, a provider aggrieved by any rate determination is entitled to bring an administrative appeal to the division. The division may, after an adjudicatory hearing, uphold the rate promulgated by the commission or it may recommend a different rate which is binding on the commission. Any party aggrieved by a decision of the division may seek judicial review in the Superior Court. See generally *Cliff House Nursing Home, Inc.* v. *Rate Setting Comm'n*, 378 Mass. 189, 191-195 (1979).

This regulatory scheme establishes a rate setting mechanism. It creates neither an obligation on the part of any governmental unit to pay any money, nor an obligation on the part of any provider to render any services. Such obligations arise only when a provider and a governmental purchaser reach an agreement relating to provision of services. In this case the department purchased services from Perkins pursuant to G. L. c. 69, § 26, and G. L. c. 71B, § 10. This gave rise to a contractual relationship between the department and Perkins. *Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 668-669 (1981). See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare, supra* at 208-209. This action for interest against a governmental

---

[3] General Laws c. 6A, §§ 31-36, inserted by St. 1973, c. 1229, § 2 (effective July 1, 1974), replaced and enlarged former G. L. c. 7, §§ 30L-30O, which was repealed by St. 1973, c. 1229, § 4 (effective July 1, 1974). Differences in these statutes relevant to this appeal will be noted.

unit of the Commonwealth is essentially a contract action of the type to which the Commonwealth is generally an indispensable party. See *Assessors of Edgartown* v. *Commissioner of Revenue,* 379 Mass. 841, 843-844 (1980); *Long Island Painting Corp.* v. *Beacon Constr. Co.,* 345 Mass. 567, 571 (1963); *Mitchell* v. *Metropolitan Dist. Comm'n,* 4 Mass. App. Ct. 484, 488-489 (1976).

"[T]he consent of the Legislature conferring jurisdiction upon the Superior Court of claims against the Commonwealth, does not grant power to governmental departments to settle such claims when they involve the particular department . . . . [T]he dangers involved in the exercise of [such] power, [lead us to conclude that] unless the power is either expressly given or required by necessary implication, it ought not to be found." *George A. Fuller Co.* v. *Commonwealth,* 303 Mass. 216, 221, 224 (1939). We find nothing in the statutory scheme which can be construed to vest in the commission or the division authority to adjudicate a contract claim against the Commonwealth. Cf. *Massachusetts Gen. Hosp.* v. *Cambridge,* 347 Mass. 519 (1964) (staying a contract claim for payment until the commission set a valid rate). Consequently, we conclude that neither the commission nor the division has authority to award interest on a contract claim. In view of this conclusion we turn to consider whether the Commonwealth was properly joined as a party defendant in this action.

2. *Joinder of the Commonwealth.* The defendants concede that "[t]he expressed tendency is in favor of allowing amendments, and a motion to amend should be allowed unless some good reason appears for denying it." *Castellucci* v. *United States Fidelity & Guar. Co.,* 372 Mass. 288, 289 (1977). *Jones* v. *Wayland,* 380 Mass. 110, 115-116 (1980). See Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974). They argue, however, that the Commonwealth has suffered undue prejudice by allowance of the motion to add it as a party. Specifically, they contend that the Commonwealth was denied the opportunity to oppose the motion to amend; to present evidence on the issues raised by Perkins's contract claim;

and to raise defenses based upon a theory of "accord and satisfaction," and on the running of the statute of limitations for a claim against the Commonwealth.

We conclude that the Appeals Court did not abuse its authority in ordering the allowance of a motion to amend the complaint in this action. See Mass. R. Civ. P. 21, 365 Mass. 767 (1974); Mass. R. Civ. P. 15, 365 Mass. 761 (1974). Cf. *Jones* v. *Wayland, supra* (not abuse of discretion for trial judge to allow motion to amend after rescript). After the amendment has been allowed the amendment relates back to the date of the original complaint and makes the added party a defendant from that date. *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 89 (1967). Mass. R. Civ. P. 15 (c). Mass. R. Civ. P. 17 (a), 365 Mass. 763 (1974).[4]

However, we agree that the Commonwealth was possibly prejudiced in so far as it was denied an opportunity to present evidence relevant to a determination of the issues raised by the plaintiff's contract claim. This possibility does not require dismissal of the Commonwealth as a defendant. We find it necessary in any event to remand this case to the Superior Court to allow the parties to present additional evidence and for findings and rulings on these same issues in accordance with the legal principles set forth in this opinion.[5]

---

[4] We reject the Commonwealth's contention that the time limitation provided in G. L. c. 260, § 3A, is a condition of the right to sue established in former G. L. c. 258. The Commonwealth argues the time limitation is jurisdictional in nature rather than a mere statute of limitations, and as such would not permit an amendment adding the Commonwealth to relate back to the commencement of the action. The question whether an enactment is a conditional statute or a statute of limitations is a matter of statutory interpretation. See *Brown* v. *Great Am. Indem. Co.*, 298 Mass. 101 (1937). We think it significant that in this instance the language of time limitation appears in a separate statute from that creating the purported substantive right, and that c. 260, in which the language appears, aggregates statutes of limitation generally. Moreover, we have observed in the past that "G. L. c. 258, § 1, . . . is procedural in purpose and is not in itself the source of any new rights against the Commonwealth." *Smith* v. *Commonwealth*, 347 Mass. 453, 456 (1964). A fortiori G. L. c. 260, § 3A, is also procedural.

[5] We reject the Commonwealth's contention that this action or any part of it is barred by the running of the statute of limitations, or that the

We now turn to consider the substantive issues raised in this appeal.

3. *The Commonwealth's liability for interest.* This is a case in which "money was owed by the [Commonwealth] to [Perkins] either on an actual or implied contract, or a statutory liability, which gave rise to a contractual relationship when [Perkins] rendered services." *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare, supra* at 209. See generally *Sargeant* v. *Commissioner of Pub. Welfare, ante* 825 (1981).[6] Thus, interest may be allowed against the Commonwealth for any "detention of money, beyond the reasonable time which the statutes requiring payment to [Perkins] fairly should be interpreted as contemplating." *Massachusetts Gen. Hosp., supra.* The critical question is whether the Commonwealth has done all that the law required of it in the particular case. If it has, it is not accountable for interest; if it has not, it is accountable for it as a compensation for the nonperformance of its contract. *Vaughan* v. *Lemoine,* 330 Mass. 83, 86 (1953). *Burr* v. *Commonwealth,* 212 Mass. 534, 537 (1912). *Dodge* v. *Perkins,* 9 Pick. 368, 385 (1830). Simply stated, there can be no improper detention of money until payment is due. Thus, we consider the statutory scheme which regulates the

---

defense of "accord and satisfaction" is applicable in this case. Perkins's cause of action seeking damages for wrongfully withheld payments did not accrue until the determination by the commission in 1976 that the plaintiff was owed additional payments because no obligation on the part of the department to make such payments arose prior to this determination. See *infra* 831-833. Cf. *Massachusetts Gen. Hosp.* v. *Cambridge,* 347 Mass. 519, 523-524 (1964). Thus, the original complaint in this action, filed April 9, 1976, was timely.

The initial parties entered in a stipulation, signed on behalf of the State agency defendants by the office of the Attorney General, stating that acceptance of the principal of payments due "shall not constitute a waiver of, nor in any way prejudice, any of appellant's claims for relief set forth in said Petition for Review." We reject the Commonwealth's contention that it should not be bound by this stipulation.

[6] We reject the Commonwealth's contention that an award of interest in this case is precluded under the rule of *Broadhurst* v. *Director of the Div. of Employment Security,* 373 Mass. 720 (1977). See *Sargeant* v. *Commissioner of Pub. Welfare, supra.*

relationship between the contracting parties to determine whether there has been an improper detention of money.

General Laws c. 6A, § 35, provides terms for payment of established rates as follows: "Any provider . . . which receives reimbursement or payment from any governmental unit . . . shall, as a condition of the receipt of such reimbursement or payment: . . . (3) accept reimbursement or payment at the rates established by the commission, subject to a right of appeal under section thirty-six, as discharging in full any and all obligations of . . . the governmental unit to pay, reimburse or compensate the provider . . . in any way. . . ."[7] General Laws c. 6A, § 32, states as a corollary that: "Notwithstanding any other law . . . to the contrary, each governmental unit shall pay to a provider of services . . . the rates for . . . services . . . determined and certified by the commission." The quoted language clearly establishes the Commonwealth's and the department's obligation to pay only determined and certified rates to a provider, as well as the provider's obligation to accept such rates as payment in full, subject to its right of appeal. In short, a provider has no contractual right to receive payments in excess of the established rate. See *Haverhill Manor, Inc.* v. *Commissioner of Pub. Welfare,* 368 Mass. 15, 23, 26 n.13 (1975); *Springfield Hosp.* v. *Commissioner of Pub. Welfare,* 350 Mass. 704, 706-709 (1966); *Massachusetts Gen. Hosp.* v. *Cambridge, supra* at 522. Cf. *Massachusetts Gen. Hosp.* v. *Weiner,* 569 F.2d 1156, 1161 (1st Cir. 1978). Only after a successful appeal by the provider does the department become obligated to make additional payments.[8] Thus, a liability for interest in the Commonwealth does not arise each time an initial rate is subsequently adjusted upward.

It is not disputed in this case that the department made timely payments to Perkins of sums due under the original

---

[7] We have held today that this language does not generally preclude an award of interest against the Commonwealth for wrongfully detained payments. See *Sargeant* v. *Commissioner of Pub. Welfare, supra* at 814-816.

[8] But see our discussion below of the possible adjustment of the date on which payment becomes due.

rates.  Nor is it disputed that the department made timely payments of sums due under the adjusted rate at the conclusion of Perkins's administrative appeal.  Contrast the *Massachusetts Gen. Hosp.* and *Sargeant* cases in which the department involved failed to make timely payments at already established rates which were never in dispute.

Nevertheless, G. L. c. 6A, § 36, provides detailed guidelines for the appeal process, including time limits for administrative action, which in this case may have been violated.[9] The Commonwealth concedes, and we agree, that the time taken to decide the 1971-1972 and 1972-1973 appeals "seems excessive."  These appeals, originally filed in 1972 and 1974, were not heard by the division until July 9, 1975. The final decision was rendered on March 31, 1976.  These

---

[9] General Laws c. 6A, § 36, inserted by St. 1973, c. 1229, § 2, provides in pertinent part: "Any person, corporation or other party aggrieved by an interim rate or a final rate established by the commission . . . and desiring a review thereof shall, within thirty days after said rate is filed with the state secretary . . . file an appeal with the division of hearings officers . . . . Any appeal filed under this section shall be accompanied by a certified statement that said appeal is not interposed for delay.  On appeal, the rate determined for any provider of services shall be adequate, fair and reasonable for such provider, based, among other things, on the costs of such provider.

"On an appeal from an interim rate or a final rate the division of hearings officers shall conduct an adjudicatory proceeding in accordance with chapter thirty A, and *said division shall file with the commissioner and the state secretary within thirty days after the conclusion of the hearing its decision*" (emphasis added).

"Said decision shall contain a statement of the reasons therefor[], including a determination of each issue of fact or law on which the decision was based.  If said decision results in a recommendation for a rate different from that certified, the commission shall based upon statement of reasons establish a new rate.  If the commission determines that the statement of reasons is inadequate to determine a fair, reasonable and adequate rate, it may remand the appeal to the hearing officer for further investigation.  Any party aggrieved by a decision of the commission may, within thirty days of the receipt of such decision, file a petition for review in superior court for the county of Suffolk, which shall have exclusive jurisdiction thereof."

Former G. L. c. 7, § 30O, which controls the appeal from the 1971-1972 and 1972-1973 rates, provided the additional requirement that the initial administrative appeal "shall be commenced within thirty days of the filing of the appeal."

administrative delays caused a delay of payments to Perkins beyond the time contemplated by the statutory scheme. In so far as these delays were not caused or contributed to by Perkins,[10] they render the Commonwealth liable for interest.[11]

As the record does not clearly establish how much delay, if any, in the payment of money due Perkins is chargeable to the Commonwealth, we remand this case to the Superior Court for further proceedings as appropriate to determine the extent of the Commonwealth's liability for interest. We now set forth guidelines as to how interest, if found due, shall be computed.

4. *Computation of interest.* The parties dispute how interest should be computed; whether that computation should be governed by G. L. c. 107, § 3,[12] or by G. L. c. 231, § 6C,[13] inserted by St. 1968, c. 763, or by both statutes applied successively.

---

[10] The record indicates that there may have been some delay between the date Perkins initially filed a notice of administrative appeal to the date Perkins perfected the appeal, and that Perkins requested a lengthy continuance of the appeal. If proved, such delays should not be charged to the Commonwealth.

[11] We are not persuaded by the Commonwealth's contention that Perkins's failure to pursue available statutory remedies should preclude an award of interest to Perkins. See G. L. c. 30A, § 14 (7) ("[t]he court may . . . compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced"); G. L. c. 6A, § 36 ("[n]othing herein shall prevent the Commission from granting temporary relief if, in its discretion, the same is justified nor, from informally adjusting or settling controversies with the consent of the parties").

[12] General Laws c. 107, § 3, provides: "If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of six dollars on each hundred for a year, but, except as provided in sections seventy-eight, ninety, ninety-two, ninety-six and one hundred of chapter one hundred and forty, it shall be lawful to pay, reserve or contract for any rate of interest or discount. No greater rate than that before mentioned shall be recovered in a suit unless the agreement to pay it is in writing."

[13] General Laws c. 231, § 6C, as appearing in St. 1980, c. 322, § 2, provides: "In all actions based on contractual obligations upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract

"The word interest in its usual sense is the compensation fixed by the parties or allowed by law [1] for the use of money or [2] as damages for its detention." *Begelfer* v. *Najarian,* 381 Mass. 177, 181 (1980), quoting from *Hayes* v. *Commissioner of Corps. & Taxation,* 261 Mass. 134, 136 (1927). Interest reserved by the terms of a contract — either by an agreement for the continuance of an indebtedness and a price therefor, or as liquidated damages or a penalty for violation of an agreement to pay an indebtedness — is referred to as conventional interest. See 11 S. Williston, Contracts 618-619 (3d ed. 1968). Otherwise, interest may be awarded by law as damages although no agreement for interest has been made by the parties. *Id.* at 618. Interest is awarded by law so that a person wrongfully deprived of the use of money should be made whole for his loss. *Id.* at 621; *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.,* 367 Mass. 57, 65 (1975), and cases cited.

The language of G. L. c. 107, § 3, suggests that it was enacted to provide a legal rate of interest for both purposes; i.e., it establishes a rate of interest in situations in which the parties have provided for interest, either at the legal rate or without establishing a rate, as well as in situations in which the law allows interest as damages for detention of money due. In contrast, G. L. c. 231, § 6C, enacted subsequently to G. L. c. 107, § 3, establishes the rate of interest to be applied only to *"judgment[s] for pecuniary damages"* (emphasis added) in "all actions based on contractual obligations." Implicitly, this statute is designed to compensate a damaged party for the loss of use or unlawful detention of money, and not to establish a legal rate for the use of money. Being a

---

rate, if established, or at the rate of ten per cent per annum, from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of court, at such contractual rate, or at the rate of ten per cent per annum from the date of the commencement of the action."

The 1974 amendment increased the interest rate from 6% to 8% per annum.

"provision of law for a different rate" (within the meaning of G. L. c. 107, § 3), G. L. c. 231, § 6C, supplants G. L. c. 107, § 3, as it was previously applied for this purpose.

If interest is due on a contractual obligation, but the contract fails to provide a rate, G. L. c. 107, § 3, establishes the proper rate. In an action to recover principal and interest under the contract, the amount of interest due is folded into the judgment. Interest at the G. L. c. 231, § 6C, rate is then applied to the entire judgment — i.e., to both principal and interest — as compensation for wrongful detention and loss of use of money. That is, the judgment creditor has been deprived of the use of both principal and interest as due under the contract.

In the instant case the contract which arose under the statutory scheme neither provides for the payment of interest nor contemplates contractual obligations involving the use of money such as would render G. L. c. 107, § 3, applicable. Rather, this is a claim for interest as damages for wrongful detention and loss of use of a principal amount of money. Thus, the proper rate of interest is established by G. L. c. 231, § 6C, as in effect during the periods of wrongful delay during which interest shall run. Cf. *Lexington* v. *Bedford,* 378 Mass. 562, 575-576 (1979). Perkins is therefore entitled to interest under the G. L. c. 231, § 6C, rate on the difference between the original rates and the adjusted rates for any period or periods of delay chargeable against the Commonwealth under the principles set forth in this opinion. Under G. L. c. 231, § 6C, interest is to be computed "from the date of the breach or demand." Although the Appeals Court held that interest should be computed from the date of monthly billings (the demand), the money due Perkins on the adjusted rate did not become legally payable until the administrative adjudication of entitlement to a higher rate (March 31, 1976). If the defendants are properly chargeable with the whole or part of the delay in obtaining such determination, interest should be charged against the Commonwealth for that period of time.

Consequently, the Superior Court may be required to determine the appropriate date on which payment was due and which commenced the running of interest.

5. *Conclusion.* The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*