WESTWOOD GROUP, INC. *vs.* CITY OF REVERE & others.[1]

Suffolk. November 6, 1986. — January 26, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & O'CONNOR, JJ.

*Interest. Taxation,* Real estate tax: assessment, abatement, due date.

Where a municipality and its officials, in proceedings before a single justice
of this court following a decision by the full court affirming a grant by
the Appellate Tax Board of certain real estate tax abatements, had failed
to contest the calculation of interest under G. L. c. 59, § 69, on the
abatements, they were precluded from raising this issue in the taxpayer's
subsequent action in the Superior Court for relief in the nature of man-
damus. [147-148]

For purposes of calculating interest payable by a municipality under G. L.
c. 59, § 69, on an abatement of real estate tax, this court expressed the
view that one half the abatement for a given fiscal year is to be applied
to each of the two equal instalments of tax contemplated by G. L. c. 59,
§ 57, and that interest is to be calculated from the portion of the abatement
applicable to each instalment. [148-151]

CIVIL ACTION commenced in the Superior Court Department
on May 11, 1984.

The case was heard by *Thomas R. Morse, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Ira H. Zaleznik* for the defendants.

*Robert K. Lamere* (*Richard P. Owens* with him) for the
plaintiff.

HENNESSEY, C.J. On April 4, 1984, this court affirmed a
decision by the Appellate Tax Board awarding the Westwood
Group, Inc. (taxpayer), abatements on real estate taxes paid
in fiscal years 1978, 1979, 1980, and 1981 to the city of

---

[1] The mayor of the city of Revere; the treasurer of the city of Revere;
the tax collector of the city of Revere; and the board of assessors of the
city of Revere.

Revere. *Westwood Group, Inc.* v. *Assessors of Revere,* 391 Mass. 1012 (1984). After a hearing on May 29, 1984, a single justice of this court ordered that an execution issue in the amount of $1,897,332.20, together with interest from April 4, 1984, the date of this court's decision affirming the decision of the Appellate Tax Board. That execution was issued on June 14, 1984. This case concerns the proper calculation of interest on those abatements under G. L. c. 59, § 69, as applied to semi-annual tax payments.

The taxpayer commenced this action in the Superior Court on May 11, 1984, seeking relief in the nature of mandamus against the defendants. On August 10, 1984, Revere paid $1,898,058.21, which it asserts was the full extent of the judgment, plus interest. The taxpayer contended that Revere owed $1,950,415.90 on that date, and thus owed the taxpayer an additional $52,357.69.

The taxpayer had the execution served on the Revere treasurer on October 9, 1984, and the execution was returned unsatisfied on November 9, 1984. The taxpayer requested the entry of defaults, which the Superior Court judge entered on January 25, 1985. At a hearing in the Superior Court on the assessment of damages in April, 1985, Revere first raised its argument on the calculation of interest. The judge rejected Revere's argument, and awarded the taxpayer $55,197.97, representing the prior underpayment of the judgment plus interest. Revere appealed, and we took the case on our own motion. We affirm.

The taxpayer argues that Revere is precluded from contesting the calculation of interest, having failed to raise or pursue the issue prior to the taxpayer's motion for the assessment of damages in April, 1985. We agree. The single justice of this court clearly had calculated and awarded interest in accordance with the taxpayer's present contentions. The amount in dispute now, ordered by judgment of the Superior Court, was a calculation of statutory interest based upon the execution issued by the single justice of this court. Revere had the opportunity in the hearing before the single justice to argue the issue of the correctness of the single justice's calculations, or to appeal that

issue to the full court. Moreover, the taxpayer wrote Revere on August 10, 1984, and again on September 19, 1984, delaying service of the execution to allow Revere to appeal the calculation of interest. Nevertheless, Revere did not pursue its appeal, and first challenged the calculation of interest at the hearing on the taxpayer's motion for assessment of damages in April, 1985. Having failed to pursue the issue, Revere may not raise it now in a collateral attack. See *Frank D. Wayne Assocs.* v. *Lussier,* 394 Mass. 619, 621-623 (1985). Cf. *Quirk* v. *Data Terminal Syss., Inc.,* 394 Mass. 334, 338-340 (1985).

However, we reach the merits of the case, as both parties have urged us. This issue is likely to recur in subsequent tax abatements, yet the dollar amounts involved in the different calculations of interest would not be large enough in most instances to induce a party to litigate the matter further. Therefore, we find it important to express our opinion on the proper calculation of interest under G. L. c. 59, § 69. See *Lenox Educ. Ass'n* v. *Labor Relations Comm'n,* 393 Mass. 276, 278 (1984); *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943).

The fiscal year for property taxes in Massachusetts begins on July 1 and ends on June 30. Property is assessed as of January 1 preceding the fiscal year beginning July 1. G. L. c. 59, § 11. The assessors establish a single assessment list, assess a single annual tax, and commit a single tax list and warrant to the collector. The entire tax is due and payable when committed to the tax collector, on approximately July 1.[2] *Macioci* v. *Commissioner of Rev.,* 386 Mass. 752, 768 (1982). See also *Boston* v. *DuWors,* 340 Mass. 402, 403-404 (1960).

Although the statute speaks in terms of a single assessment of tax "due and payable on July first" (G. L. c. 59, § 57), it also directs that the taxpayer will be charged interest only if the first half of the tax remains unpaid after November 1 (or thirty days after the tax bills are mailed, whichever is later),

---

[2] For clarity, we shall assume that the taxes are committed to the collector on July 1, although the statute permits a reasonable time. G. L. c. 59, § 52.

and interest is charged only on that unpaid one half of the tax.[3] If the taxpayer does not pay the second half of the tax by May 1, then interest is charged on that second unpaid half of the tax as well. G. L. c. 59, § 57. In practice, therefore, property taxes are generally paid in two equal instalments on November 1 and May 1 because the Legislature has directed that no penalty accrues until one of the two equal payments is late. See *Northampton Nursing Home, Inc.* v. *Assessors of Northampton,* 383 Mass. 884 (1981); A. Bailey & W. Van Dorn, Taxation § 525 (1986).

General Laws c. 59, § 69, provides: "A person whose tax has been abated shall, if the tax has been paid, be reimbursed by the town to the amount of the abatement allowed, including all interest and all charges paid therewith except legal costs paid as provided in section sixty-two, with interest on the amount so abated at eight per cent *from the time of payment or the due date of the tax, whichever is later.* This interest shall not be waived." (Emphasis added.)

The taxpayer urges that the single justice properly calculated interest on the abatements due under G. L. c. 59, § 69, by applying one half of a fiscal year's abatement to the first payment, calculating interest on that portion from November 1, and calculating interest on the second half of the abatement from May 1. Revere contests the method of calculation. Revere interprets the language of G. L. c. 59, § 69, "from the time of payment or the due date of the tax, whichever is later" to require it to pay interest on the abatement only from when the tax (as adjusted after the abatement) was paid in full, and not on that portion of the abatement attributable to each equal payment.

Revere argues that "due date," as used in G. L. c. 59, § 69, means when the entire tax is "due and payable," July 1 (or when the tax is committed to the tax collector). See *Macioci, supra* at 769; *DuWors, supra* at 403-404. This date, July 1,

---

[3] The statute provides that the equal instalments are due on November 1 or thirty days after the bills are mailed, and May 1. G. L. c. 59, § 57. For clarity, we shall assume that the bills are mailed by October 1, making the first instalment due on November 1, and the second on May 1.

is earlier than when either one-half payment must be made, November 1 and May 1. Because the statute directs interest from the later of the due date or the time of payment, Revere turns to the time of payment as controlling. According to Revere, payment was not made until the entire tax for the fiscal year (as adjusted by the abatement) was paid in full, and interest is paid only from the date the taxpayer makes a payment which, combined with any earlier payment, exceeds the entire tax for that fiscal year. Therefore, Revere reasons, unless the abatement exceeds fifty per cent of the originally assessed tax, no interest will be paid on the first equal payment made on November 1, and interest will be paid only from the payment which exceeds the entire tax, paid on May 1.

We do not agree with Revere's reasoning, and conclude that the single justice properly calculated interest under G. L. c. 59, § 69. Revere characterizes the property tax as a single sum, relying on the interpretation of "due and payable" in *Macioci* and *DuWors*. Those cases, however, concerned the finality of the tax for the purpose of a taxpayer suit seeking to enjoin its collection. *Macioci, supra* at 768-769; *DuWors, supra* at 404. Once the tax is committed to the tax collector, under *Macioci,* the taxpayer is limited to other avenues of relief. See G. L. c. 59, § 59 (abatements). The statute, however, contemplates the payment of the tax in two equal portions, not only in providing for interest on late payments (G. L. c. 59, § 57), but also as a condition to appealing the assessors' denial of an abatement (G. L. c. 59, §§ 64, 65B). We think the better view is that "due date," as used in G. L. c. 59, § 69, means when payment of the two equal instalments is expected, normally November 1 and May 1. See G. L. c. 59, § 57. The taxpayer is charged interest if payment is made later than those dates; logical symmetry suggests that the rule for abatements be interpreted similarly. Cf. G. L. c. 59, §§ 64 and 65B; *Northampton Nursing Home, Inc.* v. *Assessors of Northampton,* 383 Mass. 884 (1981); R. Marzelli, Massachusetts Real Estate Taxes and Abatements § 308.3, at 113-114 (1980).

Similarly, we conclude that "time of payment" refers to each of the equal payments, and not to when the sum of the payments

exceeds the entire tax for the year, as Revere contends. Among other consequences, late payment of an instalment incurs interest. In an economic sense, the taxpayer is deprived of his money from each instalment to the extent that he was obligated to pay more than his proper assessment. General Laws c. 59, § 69, provides interest to make the taxpayer whole; this can be accomplished only by applying one half of the abatement to each instalment, and calculating interest from that instalment.[4] See *Perkins School for the Blind* v. *Rate Setting Comm'n*, 383 Mass. 825, 835 (1981).

We conclude that the judge properly calculated the interest from the portion of the abatement attributable to each payment, as directed by G. L. c. 59, § 69.[5]

*Judgment affirmed.*

---

[4] We note that State Tax Form 147, entitled "Property Abatement Certificate," and approved by the Commissioner of Revenue, provides "this abatement will be deducted equally from each of your two tax payments."

[5] The parties stipulated that Revere placed the disputed sum in escrow following the judge's decision in the assessment of damages. The taxpayer has asked this court only to affirm the judgment entered by the court in the assessment of damages, and therefore we do not direct statutory interest be added to the court's judgment. See G. L. c. 235, § 8. We assume that the matter of such interest has been agreed between the parties, perhaps as part of the escrow agreement.