USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1752

 PROTECTIVE LIFE INSURANCE COMPANY,

 Plaintiff, Appellee,

 v.

 DIGNITY VIATICAL SETTLEMENT PARTNERS, L.P.,
 AND DIGNITY PARTNERS, INC.,

 Defendants, Appellants.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 

 Luke DeGrand, with whom Clark & DeGrand, Wayne S. Hendersonand Wayne S. Henderson, P.C., were on brief, for appellants.
 John A. Shope, with whom John H. Henn and Foley, Hoag & Eliot
LLP were on brief, for appellee.

March 24, 1999

 

 SELYA, Circuit Judge. Dignity Viatical Settlement
Partners, L.P., and Dignity Partners, Inc. (collectively, Dignity)
appeal from an order denying them prejudgment interest and imposing
sanctions in connection with their quest. The appellee, Protective
Life Insurance Company (Protective), regards the appeal as
frivolous and suggests appellate sanctions. We affirm the denial
of prejudgment interest, reverse the sanctions order, and deny
Protective's motion for further sanctions.
I. BACKGROUND
 A synopsis suffices to set the stage for this appeal. 
Protective issued a life insurance policy in Massachusetts to
Dennis Sullivan, who assigned the policy to Dignity for value. 
Protective subsequently discovered that Sullivan had been diagnosed
with HIV before procuring the policy, but had not disclosed that
known fact in his application. Consequently, Protective initiated
a declaratory judgment action against Sullivan and Dignity, seeking
to rescind the policy.
 Sullivan died of AIDS during the pendency of the
proceedings and Dignity filed a claim under the policy. Proving
once again that, in corporate America, the left hand does not
always know what the right hand is doing, Protective mistakenly
honored the claim. After the bevue surfaced, Protective amended
its complaint to add a count for unjust enrichment.
 At trial, the district court concluded that Sullivan had
perpetrated a fraud and that the incontestability clause upon which
Dignity relied, Mass. Gen. Laws ch. 175, 132(2), did not bar
Protective's suit. The court therefore rescinded the policy and
awarded Protective restitution (including prejudgment interest). 
Dignity promptly signaled its intention to appeal.
 The parties thereafter agreed that Dignity, in lieu of a
supersedeas bond, would deposit a sum certain (in excess of the
judgment amount) in a joint interest-bearing escrow account. This
stipulation obligated Dignity to release funds from the account
sufficient to satisfy the judgment (including accrued interest) in
the event that Protective prevailed on appeal. The balance, if
any, would go to Dignity. In the event of a reversal, however, the
stipulation obligated Protective to release the entire account to
Dignity. At the parties' behest, the district court entered the
stipulation as an order and stayed execution of the judgment
pendente lite.
 Dignity prevailed on appeal. See Protective Life Ins.
Co. v. Sullivan, 89 F.3d 1 (1st Cir. 1996) (certifying questions);
425 Mass. 615, 682 N.E.2d 624 (1997) (answering certified
questions). By an unpublished order dated November 24, 1997, we
directed the district court to enter a revised judgment consistent
with the resolution of the coverage issue by the Massachusetts
Supreme Judicial Court (SJC) in response to the questions we had
certified.
 On remand, Dignity sought, inter alia, prejudgment
interest from the date of the deposit into the escrow account to
the date of the new judgment. Protective sharply challenged this
claim, labeling it frivolous. The district court agreed with
Protective and concluded that presentment of the claim warranted a
$500 sanction.
II. PREJUDGMENT INTEREST
 Dignity premises its prejudgment interest claim on the
notion that it was wrongfully deprived of the use of its funds
during the period that the escrow account remained open. Although
the funds earned interest in that account, Dignity contends that
the Massachusetts prejudgment interest statute, Mass. Gen. Laws ch.
231, 6C (section 6C), entitles it to a 12% rate of return
(instead of the lesser rate of return that the funds actually
earned while in the escrow account); and it seeks the difference
between the earned amount and the amount that would have been
earned at the statutory rate. The litigants agree that, if any
prejudgment interest statute were to apply, it would necessarily be
the Commonwealth's. See Commercial Union Ins. Co. v. Walbrook Ins.
Co., 41 F.3d 764, 774 (1st Cir. 1994) (Commercial Union II). The
fundamental question, then, regards whether section 6C implicates
this set of circumstances. Like the lower court, we conclude that
it does not.
 The parties do not dispute the relevant facts, instead
presenting the question to us as one of statutory interpretation. 
Such questions engender de novo review. See Strickland v.
Commissioner, Me. Dep't of Human Servs., 96 F.3d 542, 545 (1st Cir.
1996). The language of the statute provides the starting point. 
See Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 653 (1st
Cir. 1997), cert. denied, 118 S. Ct. 2366 (1998). In this case, we
end where we begin. See United States v. Charles George Trucking
Co., 823 F.2d 685, 688 (1st Cir. 1987) (explaining that when
unambiguous statutory text points in a discernible direction and
such an interpretation achieves a plausible result, a court need
not consult extra-textual aids).
 In pertinent part, section 6C provides:
 In all actions based on contractual
 obligations, upon a verdict, finding or order
 for judgment for pecuniary damages, interest
 shall be added by the clerk of the court to
 the amount of damages, at the contract rate,
 if established, or at the rate of twelve
 percent per annum from the date of the breach
 or demand.

Mass. Gen. Laws ch. 231, 6C. Thus, for a claim to come within
the compass of the statute, a breach of a contractual obligation
must occur and that breach ultimately must ripen into a judgment
for pecuniary damages. See Perkins Sch. for the Blind v. Rate
Setting Comm'n, 383 Mass. 825, 835, 423 N.E.2d 765, 772 (1981);
Henley-Lundgren Co. v. Commonwealth, 27 Mass. App. Ct. 1195, 1196,
543 N.E.2d 698, 699 (1989). Dignity identifies neither a breach by
Protective nor a judgment in its favor for pecuniary damages, and
thus fails to bring its claim within section 6C.
 Of course, had Protective refused to pay Dignity's claim
pending resolution of the declaratory judgment action, it would
have done so in breach of the life insurance policy (as matters
turned out) but the exact opposite occurred. When Dignity
submitted its claim after Sullivan's demise, Protective promptly
honored it. That it continued to press an action for a judicial
declaration of its rights and for restitution did not place it in
breach.
 Dignity attempts to circumvent this obstacle in a number
of ways. First, it points out that the SJC has described section
6C's design as one to "compensate a damaged party for the loss of
use or unlawful detention of money." Perkins Sch., 383 Mass. at
835, 423 N.E.2d at 772. Since its deposit of funds into the joint
escrow account deprived it of the judgment amount's full time
value, Dignity reasons, it should be remunerated at the statutory
interest rate to recompense that deprivation.
 This argument will not wash. Section 6C's language
unequivocally predicates prejudgment interest on a contractual
breach that results in a judgment for pecuniary damages. Here,
moreover, faithfulness to the statutory text works no fatuity. 
After all, the joint escrow arrangement was the product of
Dignity's own business decision, not the type of involuntary
deprivation contemplated by the prejudgment interest statute (and,
interpretively, by the SJC). Similarly, any adventitious
obligation imposed on Dignity to cede a measure of control over the
escrowed sum resulted not from a wrongful withholding of the money
by Protective but from a plan Dignity itself had hatched. In other
words, the restrictions placed on Dignity's funds came at Dignity's
election, motivated no doubt by a desire to avoid the cost of a
supersedeas bond. Furthermore, Dignity stood to gain if the rate
paid by the depository bank happened, over time, to exceed that set
by the Massachusetts legislature. That the opposite occurred does
not affect the reality of events. After all, section 6C was not
meant to provide ex post protection for poor investment decisions.
 Taking an alternative tack, Dignity notes that section 6C
affords prejudgment interest as an accouterment to a "finding . .
. for pecuniary damages." Mass. Gen. Laws ch. 231, 6C. It
asseverates that, by asking for prejudgment interest, it sought a
"finding" from the trial court that it had sustained "pecuniary
damages" related to the wrongful detention of those escrowed funds. 
This asseveration puts the cart before the horse. One must secure
a judgment or finding for pecuniary damages arising out of a breach
before an entitlement to prejudgment interest can attach.
 Next, Dignity contends that First Circuit precedent
brings its claim within section 6C. To support this contention,
Dignity strives to equate the case at hand with Equitable Life
Assur. Soc'y v. Porter-Englehart, 867 F.2d 79 (1st Cir. 1989), and
Commercial Union II. Neither case is a fair congener.
 Dignity maintains that Porter-Englehart stands for the
proposition that depositing funds with a third party does not
absolve the obligation to pay statutory prejudgment interest. In
a limited sense, the case does stand for that proposition, but its
teachings are inapposite here. In Porter-Englehart, an insurer
filed an interpleader action encompassing all the proceeds of a
life insurance policy even though a particular beneficiary's right
to a portion of those proceeds was unchallenged. See id. at 89. 
Under those circumstances, we held that by unilaterally depositing
the uncontested funds into the court registry, the insurer breached
its clear duty to the beneficiary. See id. at 89-90. We therefore
awarded the beneficiary prejudgment interest on those funds at the
statutory rate for the period of the detention. See id. at 90. 
That scenario places Porter-Englehart at a remove from this case
(where the parties hotly disputed entitlement to all the insurance
proceeds and Dignity thereafter made the escrow deposit pursuant to
a bilateral agreement).
 Dignity's embrace of Commercial Union II is equally
unrequited. In that case, Walbrook refused to indemnify Commercial
Union for a claim that both had insured, so the latter commenced a
declaratory judgment action. The trial court denied
indemnification. We reversed and ordered entry of judgment for
Commercial Union. See Commercial Union Ins. Co. v. Walbrook Ins.
Co., 7 F.3d 1047, 1053 (1st Cir. 1993) (Commercial Union I). On
remand, the district court awarded Commercial Union prejudgment
interest pursuant to section 6C. We affirmed, reasoning that
although the action was for declaratory relief, the Massachusetts
statute applied because the substantive theory underlying the case
was contractual and the judgment presaged an award of pecuniary
damages. See Commercial Union II, 41 F.3d at 775.
 As Dignity points out, this case, like the Commercial
Union litigation, began as a declaratory judgment action to resolve
a coverage controversy and ended with an order that affected the
disposition of disputed funds. But the attempted analogy breaks
down in the face of critical differentiating features. Commercial
Union I determined that Walbrook's failure to indemnify constituted
a breach of its contractual obligations. That judgment resulted in
an award of pecuniary damages in the amount of the failed
indemnification. Because the defendant's breach wrongfully
deprived Commercial Union of the use of funds to which it was
entitled, section 6C applied. Here, by contrast, our reversal of
the trial court's coverage determination in no way suggested that
Protective had breached its contractual obligations, nor did it
result in a money judgment. These factors the absence of a
breach and the non-existence of a judgment for pecuniary damages 
divest Commercial Union II of controlling weight for purposes of
this case.
 We will not paint the lily. Dignity's remaining
arguments on this subject are insubstantial and require no
discussion. Suffice it to say that the district court did not err
in denying Dignity's motion for prejudgment interest.
III. SANCTIONS
 We now shift to the sanctions ruling. Although the lower
court did not specify the source of the authority upon which it
drew in imposing sanctions, the nature and language of its order
evince an intention to invoke Fed. R. Civ. P. 11. We analyze the
sanction on that basis.
 We review rulings imposing (or refusing to impose) Rule
11 sanctions for abuse of discretion. See Navarro-Ayala v. Nunez,
968 F.2d 1421, 1425 (1st Cir. 1992). Because such determinations
are almost always context-sensitive, our review is deferential 
but not reflexively acquiescent. See United States v. One 1987 BMW
325, 985 F.2d 655, 657 (1st Cir. 1993). 
 In this case, a series of pertinaciously pursued
arguments resulted in a sanctions order which the district court
supported by several findings. Dignity suggests that many of these
findings cannot survive scrutiny. Having carefully reviewed the
record, we are constrained to agree.
 In its motion for prejudgment interest, Dignity
characterized the deposit of funds into the joint escrow account as
one made "pursuant to order of [the district] court." The trial
judge took umbrage, and branded the statement "unpardonably
misleading if not an outright misrepresentation." But,
technically, the record confirms the statement. Although the idea
for the deposit did not originate with the judge, he signed the
stipulation, approved its contents, and converted it into an order
of court that obligated Dignity to establish the joint escrow
account and deposit into it funds sufficient to satisfy the looming
judgment. 
 The district judge also took issue with Dignity's
description of the account as beyond its sole control, finding that
nothing of record in the case indicated that the account was
jointly held or that the depository bank had been informed of
Protective's interest in the funds. This criticism, too, appears
unwarranted. In the first place, the stipulation approved by the
court reflected that the account was to be jointly held. In the
second place, Dignity attached to its prejudgment interest motion
a set of bank statements that showed the account in the care of the
attorneys for Protective.
 The court also condemned Dignity's citation of
authorities, particularly Porter-Englehart and Commercial Union II. 
While we agree that Dignity attempted to squeeze too much from
these cases, see supra Part II, Rule 11 does not restrict counsel
to citing cases directly on point. See, e.g., FDIC v. Calhoun, 34
F.3d 1291, 1298 (5th Cir. 1994) (reversing sanctions order when the
attempted analogy to a line of cases failed to persuade but
nonetheless constituted a good-faith argument to extend the law);
Thompson v. Duke, 940 F.2d 192, 196-97 (7th Cir. 1991) (reversing
sanctions order when party could argue plausibly, though
unsuccessfully, that his claim was distinguishable from other cases
or could mount a good-faith argument for modification of existing
case law). Dignity's use of these precedents, though aggressive,
did not justify the imposition of Rule 11 sanctions.
 The district judge's comments on Dignity's use of
Commercial Union II illustrate the point. The judge based his
sanctions order, in part, on Dignity's claim that Commercial Union
II "held that prejudgment interest is mandated by [section 6C] in
declaratory judgment actions such as this one where the underlying
theory is contractual." Although the use of the verb "mandated"
was obvious hyperbole, the superficial symmetry between Commercial
Union II and the instant case both suits sought and obtained
declaratory relief on contractual obligations and both were
reversed on appeal makes the opinion relevant as a building block
for an argument to extend section 6C's reach.
 What most incensed the court was its concern that Dignity
was seeking to double dip by trying to garner duplicative interest. 
The court termed this course of conduct "astonishing." If the
district court's assessment of the situation were factual, we would
agree. Cf. Fratus v. Republic Western Ins. Co., 147 F.3d 25, 31
n.7 (1st Cir. 1998) (denying duplicative interest as inconsistent
with the fundamental purpose of prejudgment interest). Here,
however, the court's concern was unfounded. Dignity made it
explicit in its motion that it proposed to credit the interest that
had accumulated in the joint escrow account against any prejudgment
interest award that it received. Indeed, the dollar amount that
Dignity sought as prejudgment interest ($20,216) accurately
reflected this offset.
 We have noted before that an abuse of discretion may
occur when a court erroneously attaches significant weight to one
or more factors in the decisional calculus. See Ruiz-Troche v.
Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 86 (1st Cir. 1998);
Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st Cir. 1990). 
So it is here: because the district court wedded its sanctions
order to a series of clearly erroneous factual findings, the order
constituted an abuse of discretion.
 We add an excursus of sorts. We are mindful that this
bitterly-fought litigation took many twists and turns, and that
counsel on both sides tended to push the envelope in search of a
winning theory. We can understand the district court's frustration
at the give-no-quarter tactics employed by Dignity's lawyers, and
we fully agree that Dignity's claim for prejudgment interest could
not be sustained. See supra Part II. But though that claim lacked
merit, it was not so plainly unmeritorious as to warrant the
imposition of sanctions. The mere fact that a claim ultimately
proves unavailing, without more, cannot support the imposition of
Rule 11 sanctions. See Kale v. Combined Ins. Co., 861 F.2d 746,
758-59 (1st Cir. 1988); cf. Additive Controls & Measurement Sys.,
Inc. v. Flowdata, Inc., 96 F.3d 1390, 1398 (Fed. Cir. 1996) ("In
virtually every case, an appellate court finds one party's
arguments and authorities unpersuasive, but that is not remotely
sufficient to make the losing party's conduct sanctionable.").
IV. CONCLUSION
 We need go no further. Because Dignity identified
neither a contractual breach nor a judgment for pecuniary damages
to which prejudgment interest might attach, the district court
correctly held that section 6C does not authorize an award of
prejudgment interest in the circumstances of this case. Withal,
the district court's reliance on unsupportable findings in
sanctioning Dignity for bringing the claim constituted an abuse of
discretion, requiring us to reverse the order for sanctions. 
Dignity's presentation of its prejudgment interest claim was an
aggressive step, but it fell within the wide perimeters of
permissible argumentation. If every failed legal argument were
sanctionable, sanctions would be the rule rather than the
exception.

Affirmed in part and reversed in part. No costs.